UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――――

CHAD M. CASSELL,

Plaintiff,

v.                                                                    1:25-cv-1435
                                                                      (AJB/TWD)


OFFICER BARRETT, et al.,

Defendants.

―――――――――――――――――――――――――――――――――

APPEARANCES:

CHAD M. CASSELL
*Plaintiff, pro se*
9978
Washington County Jail
399 Broadway
Fort Edward, NY 12828

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

### I.      INTRODUCTION

The Clerk has sent to the Court for review a complaint submitted by *pro se* plaintiff Chad

M. Cassell ("Plaintiff") asserting claims pursuant to 42 U.S.C. § 1983.  *See* Dkt. No. 1.  Plaintiff,

who is currently confined at the Washington County Jail, has not paid the filing fee for this

action and seeks leave to proceed *in forma pauperis* ("IFP").  *See* Dkt. Nos. 2, 3.

### II.      IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court

without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No.

1:09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent,

incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)); *see also* 28 U.S.C. § 1915A(c) ("As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.").

Upon review, Plaintiff's IFP application demonstrates economic need. *See* Dkt. No. 2. Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and has filed the inmate authorization form required in this District, *see* Dkt. No. 3, he is granted permission to proceed IFP.[1]

## III.    COMPLAINT

Plaintiff commenced this action utilizing a form civil rights complaint, identifying 42 U.S.C. § 1983 as the basis for his claims. *See* Dkt. No. 1 at 6.[2]  The complaint lists four defendants, State Police Officers Barrett and Bezio, and Washington County Sheriffs Kraeger and Wright. *Id*. at 7-8.

With his complaint, Plaintiff submitted a five-page "Story Letter to Explain what has happened in this Cla[i]m . . . ." *See id*. at 1-5 (emphasis omitted).  From what the Court can

---

[1] Although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

glean, Plaintiff claims concern incidents which occurred at a residence located in Hudson Falls, New York, in the weeks prior to and on July 22, 2025. *See id.*

Plaintiff's complaint lists the following claims: (1) "ever[y] one of the officers violated my Con[s]t[i]tutional Amendment Right[s] all the way though the whole process. My 14th, 11th, 10th, 8th, 6th, 4th, 1st Amendments Rights;" (2) "I told every officer that she did not live there and had the proof, all they had to do was call the state troops officer we made the agreement with and they would have known that she was l[y]ing on her statements both of them;" (3) "I[']m now forced to do time as an innocent man I lost my house, all my things, I don't know what happ[en]ed to my dog, all my valu[]ables & collectables, my truck, everything I've worked the last 25 years for are gone and I might have to do 6 months also on top of all this, my life if a living hell right now;" (4) "unconstitutional conditions of confinement violated my Con[s]t[i]tutional Amendment Rights;" (5) "was guilty and never given the right to prove my innocence;" (6) "failure to protect Violated my Con[s]t[i]tutional Amendment Rights." *Id.* at 10. He seeks $2,000,000 in relief "for each said Defendant in this case." *Id.*

## IV.    LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2); § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Moreover, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.     ANALYSIS

Rule 8 of the Federal Rules of Civil Procedure requires a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "The purpose of [Rule 8] is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them . . . ." are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order). Rule 10 of the Federal Rules of Civil Procedure provides "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances . . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense." Fed. R. Civ. P. 10. Rule 10 serves "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading . . . ." *Flores*, 189 F.R.D. at 55 (internal

quotations and citation omitted).  A complaint that fails to comply with these pleading

requirements "presents far too a heavy burden in terms of defendants' duty to shape a

comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency

of their claims," and may properly be dismissed by the Court.  *Gonzales v. Wing*, 167 F.R.D.

352, 355 (N.D.N.Y. 1996); *see also*, *e.g.*, *Gosier v. Collins*, No. 6:23-CV-1485 (DNH/TWD),

2024 WL 1016392, at *2 (N.D.N.Y. Mar. 8, 2024), *report and recommendation adopted*, 2024

WL 1307035 (N.D.N.Y. Mar. 27, 2024).

Here, Plaintiff's complaint entirely fails to comply with the Federal Rules' pleading

requirements, as it lacks both a short and plain statement showing Plaintiff is entitled to relief as

well as numbered paragraphs, limited as far as practicable to a single set of circumstances.  The

Plaintiff's rambling "Story Letter" is replete with legal conclusions, rather than well-pleaded

factual allegations.  As such, dismissal is warranted.

Moreover, even if Plaintiff's submissions complied with the pleading requirements set

forth in Rules 8 and 10, the complaint is entirely devoid of factual allegations against Defendants

Barrett and Bezio.  *See generally*, Dkt. No. 1.  While the pleading contains allegations against

"Kraeger," "Wright," and unspecified "Defendants," "Officers," and "Cops," *see id*. at 1-5,

because Defendants Barrett and Bezio are identified only in the caption and list of parties, *see id*.

at 1, 7-8, the complaint fails to state a claim against those defendants for this additional reason.

*See*, *e.g.*, *Bradshaw v. Annucci*, No. 9:23-CV-0602 (MAD/ML), 2023 WL 4744735, at *13

(N.D.N.Y. July 24, 2023) ("Dismissal is appropriate where a defendant is listed in the caption,

but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citing

*Cipriani v. Buffardi*, No. 9:06-CV-0889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb.

20, 2007)) (additional citation omitted); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)

(Although the Court is "obligated to draw the most favorable inferences that [the Plaintiff]'s complaint supports, we cannot invent factual allegations that he has not pled."); *Joseph v. Annucci*, No. 7:18-CV-7197, 2020 WL 409744, at *4 (S.D.N.Y. Jan. 23, 2020) (dismissing claims against defendants "named in the caption only" where "[t]he body of the Complaint [did] not contain any factual allegations naming them, or indicating that they violated the law or injured the Plaintiff in some manner.").

As previously stated, before dismissing a *pro se* complaint or any part of the complaint *sua sponte*, the Court should generally afford the plaintiff an opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Here, the undersigned recommends Plaintiff be afforded leave to amend.

The Court advises Plaintiff that should he be permitted to amend his complaint, any amended pleading he submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint should specifically identify the legal theory or theories that form the basis for his claim. Plaintiff must provide a short and plain statement of the relevant facts supporting his claim against any Defendant named in the amended complaint. Plaintiff should describe all relevant facts supporting his case, including the date and time, to his best approximation. Plaintiff must describe how the Defendants' acts or omissions violated his rights, and do so in numbered paragraphs limited as far as practicable to a single set of circumstances. Plaintiff is cautioned that no portion of his prior complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against each Defendant and must demonstrate that a case or controversy exists between the Plaintiff and the Defendants which

Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging the Defendant violated a law, he should specifically refer to such law. Of course, Plaintiff may also pursue his claims in state court if appropriate.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**, and it is

**ORDERED** that the Clerk shall provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization (Dkt. No. 3) and notify the official that this action has been filed and that Plaintiff is required to pay the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915;[3] and it is further

**ORDERED** that the Clerk shall provide a copy of Plaintiff's inmate authorization (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation and Order, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

---

[3] Prisoners are not exempt from paying the filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated:  December 1, 2025
        Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,
v.
BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1**  TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants—Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit

his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]      Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

### III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson* [3] *v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

[3]      It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff

in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

• In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at *1, *7.

• In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM)(RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

• Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

*3 As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]    Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci[a]list before the gane green [*sic*] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

5    Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

> *Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

> Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

### All Citations

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

2024 WL 1016392
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS, et al., Defendants.

6:23-cv-1485 (DNH/TWD)
|
Signed March 8, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, pro se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review a *pro se* civil rights complaint filed by Willie Thomas Gosier ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of June 11, 2023, traffic stop in Rome, New York. (Dkt. No. 1.) Plaintiff has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2.)

## II. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

At the time Plaintiff commenced this action, he was an inmate at the Oneida County Correctional Facility. (Dkt. Nos. 1, 2.) Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service.[1] Based on that review, it does not appear Plaintiff had acquired three strikes for purposes of Section 1915(g) as of the date this action was commenced.[2]

[1]    *See* http://pacer.uspci.uscourts.gov (last visited Mar. 8, 2024).

[2]    *See Gosier v. Oneida Cnty. District Atty's Office*, No. 6:23-cv-01118 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023; closed on Nov. 2, 2023) ("*Gosier I*"); *Gosier v. Utica Police Dep't*, No. 6:23-cv-01119 (DNH/TWD) (N.D.N.Y. filed on Sept. 1, 2023) ("*Gosier II*"); *Gosier v. Oneida Cnty. Corr. Fac.*, No. 9:23-cv-01134 (DNH/CFH) (N.D.N.Y. filed on Sept. 5, 2023) ("*Gosier III*"); *Gosier v. Paolozzi*, No. 9:23-cv-01135 (GTS/TWD) (N.D.N.Y. filed on Sept. 5, 2023;

Case 1:25-cv-01435-AJB-TWD   Document 4   Filed 12/01/25   Page 15 of 79

**Gosier v. Collins, Not Reported in Fed. Supp. (2024)**

2024 WL 1016392

closed on Jan. 30, 2024) ("*Gosier IV*"). The Court notes *Gosier I* and *Gosier IV* were *sua sponte* dismissed on initial review and Plaintiff has been granted leave to file amended complaints in *Gosier II* and *Gosier III*.

Upon review of Plaintiff's IFP application, the Court finds Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in this District. (Dkt. Nos. 2, 3.) Accordingly, Plaintiff's IFP application is granted. [3]

[3]     "Although an indigent, incarcerated individual need not prepay the filing fee at the time ... of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). Plaintiff should also note that although his motion to proceed IFP has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

**\*2**   Having found Plaintiff meets the financial criteria for commencing this action IFP, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [4]

[4]     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court looks to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 provides in pertinent part that: "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, No. 22-CV-1248 (MAD/DJS), 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the Court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing

**Gosier v. Collins, Not Reported in Fed. Supp. (2024)**

2024 WL 1016392

*Twombly*, 550 U.S. at 555). Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

#### B. Background

**\*3** The complaint in this action, brought against defendants David J. Collins, Chief of Police of the Rome Police Department, and two unknown police officers, consists of two form complaints—one on the form complaint for civil rights violations pursuant to 42 U.S.C. § 1983 and one on the form complaint for *pro se* prisoner complaints—and four attached narrative pages. (Dkt. No. 1.) The narrative section spans five handwritten pages and is essentially one paragraph with limited punctuation. *See id.* at 8-13. [5] The Court will construe the allegations in the complaint with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"). The following facts are taken from Plaintiff's complaint.

[5]    The Court will refer to the CM/ECF pagination when citing to the complaint. Unless otherwise indicated, excerpts from the complaint are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

On June 11, 2023, between the hours of 6:00 a.m. and 5:00 p.m., Plaintiff was "stopped" by Rome Police Officers "John Doee and John Doee (the "defendant police officers") in the City of Rome for "speeding" near the Colonial Laundromat. *Id.* at 8. The defendant police officers claimed Plaintiff was going "50 in a 30 zone." *Id.* But Plaintiff "was only doing 35 in a 30 zone which is legal." *Id.* Plaintiff believes he was "targeted and labeled" because he is a young "black mixed person." *Id.* at 11. Plaintiff claims when a "person of color" has "valuable things" like a car, "they ... label you as a drug dealer or a person who conduct's crime." *Id.*

During the traffic stop, the defendant police officers "searched" Plaintiff's name, told Plaintiff he "was under suspention," and instructed him to "get out of [the] car." *Id.* at 8. Plaintiff was "unlawfully" handcuffed, and the defendant police officers conducted a "patdown search" and "searched" the car. *Id.* He was "placed" in the back of the patrol car and "witntnessed" the defendant police officers "pull" his female friend out of the car. *Id.* at 8-9. While holding her arms, "one officer pulled her pant's/panties a way from her body" and "the other reached into her pant's/panties and pulled some thing out completely illegal search." *Id.* at 9. They then took Plaintiff's "book bag's out of the car and trunk 1 book bag was her's with personal paper's, document's item's and looked thru it all[.]" *Id.* "They even took our cell phones" and "searched thru them with no warrent." *Id.* "Still to this date have not gotten my property back none of it they impounded my car. [6] *Id.*

[6]    Plaintiff was able to "get" his car "out" but it "cost me a lot" on a Sunday. (Dkt. No. 1 at 9.) But when he picked up his car, he "had a flat tire and a dent on the passenger side .. [and] had to pay to get inside of car done due to coffiee being spilt on ... swade seats and glitter being all over." *Id.*

Plaintiff claims "driving under a suspention is a misdemeaner and dose not justify handcuffing or conducting a pat down search." *Id.* at 12. "It was a complete unlawful stop and all evidence need's to be suppressed." *Id.*

When Plaintiff "arrived at RPD" on June 11, 2023, the "RPD" did not read Plaintiff his *Miranda* rights, and he was "interrogated" without a lawyer being present and without being told he could have a lawyer. *Id.* at 9-12. "They" asked him questions like, "why was i in Rome what was i doing where did i go in rome why how long ect." *Id.* at 12.

A "couple" of months later, Plaintiff was "charged with what they found in her pant's/panties." *Id.* at 9. On July 15, 2023, he also was "charged with criminal possession of weapon 2nd: loaded firearm-other than person's home/business which charge is still pending against me till this day." *Id.* at 9-10.

**\*4** Plaintiff alleges the "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence" and violated his constitutional rights. *Id.* at 10. Plaintiff claims "they" had "no ground's to pull me over" and the

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

defendant police officers "should have had a female cop come and conduct that search" of his female friend. *Id.* at 9. "But even so it would still have been unlawful due to them not having probable cause to search me, my car, or my friend what so ever." *Id.* According to Plaintiff, "it is 100% legal" to drive "35 in a 30 zone" therefore, the stop was "1000% not a valid traffic stop at all" and that he "did not [break] any traffic violations or rule/law's." *Id.* at 10. Plaintiff further claims "it is said in supreme and other higher courts that you do not need a license to drive a car, SUV, truck in the United States ... it is protected by my con. Amendment right travel 4th, 5th amendment rights's." *Id.*

In his prayer for relief, Plaintiff seeks $2,000,000 and "for the officer's to be charged and prociecuted for act's and investigate RPD misconduct." *Id.* at 4,13.

### C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (citations omitted); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (finding that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Moreover, the theory of respondeat superior is not available in a section 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Instead, "[t]he violation must be established against the supervisory official directly." *Tangreti*, 983 F.3d at 618.

### IV. ANALYSIS

The Court construes the allegations in the complaint with the utmost leniency. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers."). Upon review and for the reasons below, the Court finds Plaintiff's complaint fails to comply with the basic pleading requirements and fails to state a claim. Accordingly, the Court recommends dismissal of the complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### A. Rules 8 and 10

A complaint is subject to dismissal if its "form or substance prevents the defendant from forming a 'fair understanding' of the plaintiff's allegations or otherwise prejudices the defendant in responding to the complaint." *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319, 345 (S.D.N.Y. 2014). Ultimately, a complaint must give "fair notice" to the defendants. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("The function of pleadings under the Federal Rules is to give fair notice of the claims asserted." (internal quotation marks omitted)). Rule 8 "demands more than an adorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In this instance, Plaintiff's rambling complaint consists almost entirely of legal conclusions, rather than well-pleaded factual allegations. As explained in more detail below, Plaintiff's complaint does not comply with Rule 8 because Plaintiff does not make a short and plain statement showing that he is entitled to relief from the named defendants. Additionally, Plaintiff's complaint does not comply with Rule 10 because it lacks numbered paragraphs, each limited as far as practicable to a single set of circumstances.

### B. Official Capacity Claims

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

**\*5** Plaintiff's complaint does not specify whether he intends to bring claims against the named defendants in their individual or official capacities. "A claim asserted against an individual in his official capacity ... is in effect a claim against the governmental entity itself, rather than a suit against the individual personally, for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)); *Bryant v. Maffucci*, 923 F.2d 979, 986 (2d Cir. 1991) ("In bringing suit against defendants in their official capacities, Bryant has effectively brought suit against the governmental unit that employs them, Westchester County[.]"). Thus, the Court considers whether Plaintiff has stated constitutional claims against the City of Rome, who is the real party in interest.

"A municipality is liable under section 1983 only if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (citing *Monell*, 436 U.S. at 691). Thus, to hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Here, Plaintiff's claim construed against the City of Rome appears to stem from an isolated instance of alleged unconstitutional conduct by the defendant police officers in the course of a traffic stop. Such an isolated act by a non-policymaking municipal employee is "generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify liability." *Matusick*, 757 F.3d 31 at 62 (2d Cir. 2014) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 82 (2d Cir. 2012)). But such isolated instances would be a basis for municipal liability if they were done

> pursuant to municipal policy, or were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses.

*Jones*, 691 F.3d at 81. The only factual allegations potentially bearing on any such basis for municipal liability are the allegations that Plaintiff is "being targeted" for being a "young and black mixed person of color." (Dkt. No. 1 at 11.) Plaintiff states:

> i feel this is at most descrimination at it's finest and racel profiling. That's a huge violation of my con. Amendment right's. it's not okay or right one bit. Just because im a young black mixed person of color. it is not right that RPD get's a way with thing's like this all the time, nothing ever get's done about it. They do as they please and they find it okay to do such conduct's it's completely not okay or right for such act's. This need's to change it's not right at all, right is right wrong is wrong."

*Id.* at 12. The Court infers this is an allegation of racially motivated police conduct. Plaintiff also list "harassment" as a cause of action.[7] *Id.* at 13.

---

[7] To the extent the complaint could be construed as asserting a verbal harassment claim, allegations of verbal harassment are insufficient to support a Section 1983 claim. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) ("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged")); *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998) (holding that "verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional,

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 19 of 79

or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983") (quotation omitted); *see also Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (collecting cases).

**\*6** "The Second Circuit has admonished that courts should 'not condone racially motivated police behavior' and must 'take seriously an allegation of racial profiling.' " *Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (quoting *United States v. Davis*, 11 F. App'x 16, 18 (2d Cir. 2001)). In this case, however, Plaintiff's "general and conclusory" allegations are insufficient to establish any plausible claim of municipal liability. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015). Plaintiff alleges no other specific conduct by City of Rome officials, nor does he cite any other facts or circumstances in support of any claim that a policy of racial profiling or racial animus exists in the City. Moreover, insofar as the complaint may allege that employees of the Rome Police Department violated Plaintiff's constitutional rights, those allegations fail to state a claim against the City of Rome because a municipality may not be liable on the basis of respondeat superior. *See Monell*, 436 U.S. at 691.

Accordingly, it is recommended that Plaintiff's official capacity claims be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue claims against the City of Rome, he must name the City of Rome as a defendant in the list of parties and state facts suggesting that a City policy, custom, or practice caused the violation of his rights during or after the traffic stop.

### C. Individual Capacity Claims Against Defendant David J. Collins

It is well-settled that "[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *Taylor v. City of New York*, 953 F. Supp. 95, 99 (S.D.N.Y. 1997) (same).

In this case, Plaintiff names David J. Collins as a defendant in the recitation of parties, but the complaint lacks any specific allegations of wrongdoing by this defendant. Rather, it appears Plaintiff has sued defendant Collins due to the supervisory position he holds. The only reference to defendant Collins in the body of the complaint is as follows, "Rome Police Officers and Chief of Police all took part in such conduct and letting such conduct commence violated my Con. Amendment right's 2nd, 4th, 5th, 14th. So i Willie T. Gosier's Jr's right's have been violated due to an illegal/unlawful stop they had no ground's to pull me over." (Dkt. No. 1 at 10.) Thus, the complaint does not include any plausible allegations of personal involvement by defendant Collins.

Accordingly, it is recommended that Plaintiff's Section 1983 claims against defendant Collins be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. If Plaintiff intends to pursue Section 1983 claims against defendant Collins, Plaintiff must sufficiently alleged defendant Collins' personal involvement in the claimed violations.

### D. Individual Capacity Claims Against Defendants John Doee # 1 and # 2

#### 1. Unlawful Search and Seizure

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A police officer may briefly detain a suspect, consistent with the Fourth Amendment, when the officer has a reasonable suspicion that "criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

**Gosier v. Collins, Not Reported in Fed. Supp. (2024)**

2024 WL 1016392

In the context of traffic laws, "reasonable suspicion of a traffic violation provides a sufficient basis under the Fourth Amendment for law enforcement officers to make a traffic stop." *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009). Even a "minor" traffic violation meets this standard and provides probable cause for a stop. *United States v. Scopo*, 19 F.3d 777, 782 (2d Cir. 1994) (finding police had probable cause to arrest defendant for "not signaling lane changes"), *cert. denied*, 513 U.S. 877 (1994).

**\*7** Here, Plaintiff's claims alleging violations of constitutional rights arising from the traffic stop are undermined by his own admissions in the complaint. [8] Specifically, Plaintiff claims he was pulled over for speeding. (Dkt. No. 1 at 8.) Contrary to Plaintiff's assertion, travelling over maximum speed limits is a violation of New York State Vehicle and Traffic Law, thus providing probable cause for the traffic stop. *See* N.Y. Veh. & Traf. Law § 1180(d).

[8]     As described above, Plaintiff also takes issue with the June 11, 2023, search of his female friend. However, a *pro se* plaintiff cannot bring any claims on behalf of any other plaintiff. *See Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (because *pro se* means to appear for oneself, a person may not appear on another person's behalf in the other's cause).

Though Plaintiff contends the reason cited by the defendant police officers was pretextual, the subjective intent of an officer performing a traffic stop is irrelevant. *United States v. Dhinsa*, 171 F.3d 721, 724-25 (2d Cir. 1998) ("[A]n officer's use of a traffic violation as a pretext to stop a car in order to obtain evidence for some more serious crime is of no constitutional significance."); *see, e.g.*, *Aikman v. Cnty. of Westchester*, 491 F. Supp. 2d 374, 381 (S.D.N.Y. 2007) (dismissing the plaintiff's Fourth Amendment "racial profile claim" where the officers "had probable cause to believe [the plaintiff] violated New York traffic laws").

Once a lawful traffic stop based on probable cause has occurred, a police officer may make "ordinary inquiries incident to the traffic stop," and "[t]ypically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (alterations omitted). Additionally, if the traffic stop is lawful, neither the driver nor any passengers have a "Fourth Amendment interest in not being ordered out of the stopped vehicle." *Mollica v. Volker*, 229 F.3d 366, 369 (2d Cir. 2000). Indeed, "a police officer may as a matter of course, order" a passenger or a driver out of "a lawfully stopped car." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (per curiam)).

Based on the information provided in the complaint, it appears the defendant police officers learned Plaintiff did not have a valid driver's license. Plaintiff alleges after the stop, the defendant police officers "searched my name they then returned told me i was under suspention which i was not under suspention told me get out of my car and unlawfully handcuffed me conducted a patdown search of me searched my car with out probable cause place me in the back of the patrole car." (Dkt. No. 1 at 8.) The defendant police officers also searched Plaintiff's friend and "some thing" was "pulled" from her "pant's/panties." *Id.* at 8-9. Plaintiff also accuses the defendant police officers of invading his "privacy" when they conducted a "pat down search," searched his car, and "took" his personal belongings including paperwork, documents, cell phones, and book bags without consent or a warrant. (Dkt. No. 1 at 3.) Plaintiff was then apparently taken to the Rome Police Department. *Id.* at 11-12. There are no allegations that the stop lasted any longer than necessary. As such, Plaintiff has not stated a constitutional claim concerning a prolonged and unconstitutional seizure. *See Rodriguez*, 575 U.S. at 354.

**\*8** Insofar as Plaintiff claims that "driving under a suspention is a misdemeanor" and does "not justify handcuffing and or conducting a patdown search," and "you do not need a license to drive a car ... in the United States of America," Plaintiff is mistaken. (Dkt. No. 1 at 10, 12.) Under New York's Vehicle & Traffic Laws, a valid driver's license is required to operate a motor vehicle. *See* N.Y. Veh. & Traf. Law § 509; *see also id.* § 511 (prohibiting operating a car without a valid license). Thus, while the precise details are unclear, it appears the defendant police officers likely had probable cause to believe Plaintiff had committed a criminal offense. And a search incident to an arrest, "constitutes an exception to the warrant requirement" imposed by the Fourth Amendment. [9] *Riley v. California*, 573 U.S. 373, 382 (2014).

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

9

> In New York a person is guilty of Criminal Possession of a Weapon in the second degree if he or she possesses a loaded firearm and does not have a license to possess such a firearm. *See Bannister v. Luis*, No. 18-CV-7285, 2022 WL 19402512, at *45 (E.D.N.Y. Feb. 16, 2022) (citing N.Y. Penal Law § 265.03), *report and recommendation adopted as modified*, 2023 WL 2325680 (E.D.N.Y. Mar. 2, 2023). Under New York law, the existence of a firearm in an automobile creates a permissive presumption that all occupants of the vehicle have common constructive possession of the firearm, absent certain statutory exceptions which are inapplicable here. *Id.* "If a jury may make a presumption of possession under the law, it is reasonable for a police officer to do the same." *Id.* Thus, regardless of whether the firearm was found on the Plaintiff's person or in his car, the officers had probable cause for his arrest.

Additionally, the automobile exception to the warrant requirement of the Fourth Amendment permits officers to "conduct a warrantless search of a vehicle if they have probable cause to believe it contains contraband or other evidence of a crime." *United States v. Wilson*, 699 F.3d 235, 245 (2d Cir. 2012). Probable cause requires only a "fair probability" that evidence of a relevant violation will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When the exception applies, officers may search any area of the vehicle in which they have "probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991); *see also United States v. Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); *see also United States v. Harris*, No. 21-CR-376, 2022 WL 13798289, at *2 (E.D.N.Y. Oct. 21, 2022).

In sum, based on the information provided in Plaintiff's complaint, it appears the defendant police officers likely had probable cause to stop and arrest Plaintiff. Armed with probable cause, the search of Plaintiff's person and vehicle appears to have been a lawful search incident to arrest. *See United States v. Jenkins*, 496 F.2d 57, 79 (2d Cir. 1974) (finding search prior to arrest to be lawful "as long as probable cause to arrest existed at the time of the search"); *see generally Thornton v. United States*, 541 U.S. 615, 617 (2004) (holding search of vehicle's passenger compartment to be contemporaneous incident of arrest, though driver arrested outside vehicle).

Accordingly, it is recommended that Plaintiff's Section 1983 illegal search and seizure claim against the defendant police officers be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [10]

10

> Plaintiff claims he was "charged" with "what they found" on his friend's person and also charged with "possession of a weapon 2nd: loaded firearm-other than person's home/business." (Dkt. No. 1 at 9-10.) Plaintiff states "the loaded firearm charge" is "still pending against me till this day." *Id.* at 10. The Court notes, however, that under abstention principles, the Court typically refrains from intervening in a state-court criminal proceeding. *See, e.g.*, *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). Moreover, to the extent that Plaintiff seeks the remedy of "suppression" of any items seized during the search, that remedy is simply inapplicable in a § 1983 suit. *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine ... is inapplicable to civil § 1983 actions.").

### 2. False Arrest

**\*9** "A [Section] 1983 claim for false arrest[ ] resting on the Fourth Amendment ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). "Under New York law, a plaintiff claiming false arrest must show, inter alia, that the defendant intentionally confined him without his consent and without justification." *Id.* Probable cause "is a complete defense to an action for false arrest" brought under New York law or section 1983. *Id.* (citation omitted). Police officers have probable cause to arrest when they possess "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (collecting cases); *see, e.g.*, *Johnson v. Harron*, No. 91 Civ. 1460, 1995 WL 319943, at *9 (N.D.N.Y. May 23, 1995) (concluding that DMV computer information showing driver's license was suspended established probable cause for arrest).

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

Read liberally, the complaint may raise a claim for false arrest. Plaintiff claims he was handcuffed, placed in the patrol car, was taken to the Rome Police Department, and was not read his *Miranda* rights. (Dkt. No. 1 at 8-12.) But the complaint focuses on the initial traffic stop and search and does not include details about the basis for the arrest that would allow the Court to evaluate whether he was arrested without justification. Accordingly, it is recommended that Plaintiff's Section 1983 false arrest claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [11]

[11]    If Plaintiff intends to bring such a claim, he should amend his complaint to add facts establishing that he was arrested without justification and the disposition of any charges.

### 3. Excessive Force

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017) (internal quotations omitted). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

Here, "excessive force" is listed as a cause of action. (Dkt. No. 1 at 13.) Plaintiff claims he was "unlawfully pulled out of [his] car," "handcuffed" and subjected to a "pat down search." *Id.* at 8. With this allegation and nothing more, there are simply not enough facts present to establish a plausible excessive force claim. *See Burroughs v. Petrone*, 138 F. Supp. 3d 182, 214 (N.D.N.Y. 2015) (excessive force claim based on rough pat and frisk and push by officers, without other facts or injury alleged, dismissed); *see also Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009) (declining to find any constitutional violation from plaintiff's allegations of officers' forceful behavior, including a "single push," during the time he was handcuffed).

Accordingly, it is recommended that Plaintiff's Section 1983 excessive force claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 4. Due Process

The complaint lists "5th Due Prosses" as a claim and Plaintiff states "I also have a privilege aganced self incrimination suspect's statement's, comment's remark's before *Miranda* rights cant be used in court." (Dkt. No. 1 at 12, 13.) "While a defendant has a constitutional right not to have a coerced statement used against him, the failure to provide *Miranda* warnings does not constitute a Fifth Amendment violation or a violation of federal law." *Jallow v. Geffner*, No. 23-CV-3969, 2024 WL 37073, at *10 (S.D.N.Y. Jan. 2, 2024) (citing *Vega v. Tekoh*, 597 U.S. 134, 142-152 (2022)); *see also Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (relying on *New York v. Quarles*, 467 U.S. 649, 654 (1984) (a defendant does not have a constitutional right to receive *Miranda* warnings because warnings are only a procedural safeguard designed to protect a person's right against self-incrimination)).

**\*10** Generally, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Gentry v. New York*, No. 1:21-CV-319 (GTS/ML), 2021 WL 3037709, at *7-8 (N.D.N.Y. June 14, 2021), *report and recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (quoting *Hernandez v. Llukaci*, No. 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003))). "The failure to inform a plaintiff of his rights under *Miranda*, 'does not, without more, result in § 1983 liability.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 346). "The

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)) (internal quotations omitted). However, " '[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declarant in any fashion.' " *Id.* (quoting *Deshawn E. v. Safir*, 156 F.3d at 348 (internal citations omitted)).

Here, the complaint does not allege any facts that would plausibly suggest police coercion led to inculpatory statements. As a result, it is recommended that Plaintiff's Section 1983 due process claim be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 5. Right to Travel

The complaint lists "5th right to travel" as a claim. (Dkt. No. 1 at 3, 13.) "The Constitution protects a fundamental right to travel within the United States," *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 99 (2d Cir. 2009), but "travelers do not have a constitutional right to the most convenient form of travel, and minor restrictions on that travel simply do not amount to the denial of a fundamental right[.]" *Scott v. Crossway*, No. 1:22-CV-500 (BKS/CFH), 2022 WL 16646531, at *10 (N.D.N.Y. Nov. 3, 2022) (quoting *Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 54 (2d Cir. 2007) (alterations, citations, and quotation marks omitted)), *report and recommendation adopted*, 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023);

Even liberally construed, Plaintiff has not alleged any facts to suggest a violation of his constitutional right to travel. Plaintiff's allegations regarding his right to travel relate to the traffic stop and seizure of his vehicle, which is akin to his illegal search and seizure claim. *See, e.g.*, *Wellington v. Foland*, No. 3:19-CV-0615 (GTS/ML), 2019 WL 3315181, at *6 (N.D.N.Y. July 24, 2019), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019); *Bey v. D.C.*, No. 17-CV-6203, 2018 WL 5777021, at *6 (E.D.N.Y. Nov. 1, 2018) (dismissing the plaintiff's "right to travel claim" where the plaintiff retained his ability and constitutional right to travel even if "inconvenienced" by the seizure of his motor vehicle."); [12] *see also Johnson El v. Bird*, No. 19-CV-5102, 2020 WL 5124920, at *5 n.8 (S.D.N.Y. Aug. 31, 2020) ("To the extent Plaintiff means to argue that traffic enforcement violates his right to travel, that claim is dismissed as frivolous.") (citing *Annan v. State of N.Y. Dep't of Motor Vehicles*, No. 15-CV-1058, 2016 WL 8189269, at *5 (E.D.N.Y. Mar. 2, 2016), *aff'd*, 662 F. App'x 85 (2d Cir. 2016) (summary order)).

[12]    To the extent Plaintiff claims the defendant police officers deprived him of a property interest by impounding his car, Plaintiff has not pled facts sufficient to establish that he was deprived of that interest without due process. *See, e.g.*, *Hawthorne by Hawthorne v. Cnty. of Putnam*, 492 F. Supp. 3d 281, 304 (S.D.N.Y. 2020) (noting that where the defendants' impounded the plaintiff's car following a traffic stop the conduct did not implicate procedural due process concerns); *Vasquez v. Yadali*, No. 16-CV-895, 2020 WL 1082786, at *12 (S.D.N.Y. Mar. 5, 2020) (noting that the plaintiff fails to allege the inadequacy of any post-deprivation hearings following the impoundment of his vehicle); *Domeneck v. City of New York*, No. 18-CV-7419, 2019 WL 5727409, at *10 (S.D.N.Y. Nov. 5, 2019) (dismissing plaintiff's Fourteenth Amendment claim regarding the deprivation of his vehicle because the plaintiff has not plausibly alleged that the process he received was insufficient).

**\*11**  The Court therefore recommends dismissing Plaintiff's Section 1983 right to travel claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim.

### 6. Right to Bear Arms

The complaint lists "2nd Bear Arm's" as a claim. (Dkt. No. 1 at 13.) The "Second Amendment protects 'an individual right to keep and bear arms.' " *District of Columbia v. Heller D.C. v. Heller*, 554 U.S. 570, 595 (2008). But "[l]ike most rights, the right

secured by the Second Amendment is not unlimited" and is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. For example, the Second Amendment allows "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 627-28.

Here, Plaintiff's conclusory allegation regarding his right to "Bear Arm's" provided by the Second Amendment is insufficient to state a plausible claim for relief given the numerous limitations on an individual's right to bear arms. *See, e.g.*, *McClenic v. Shmettan*, No. 15-CV-00705, 2016 WL 3920219, at *8 (E.D.N.Y. July 15, 2016) (dismissing the plaintiff's conclusory allegation that defendant detectives violated his Second Amendment right "to keep and bear arms" where, *inter alia*, was charged with criminal possession of a weapon second degree in a felony complaint); *see also Partin v. Gevatoski*, No. 6:19-CV-1948-AA, 2020 WL 4587386, at *4 (D. Or. Aug. 10, 2020) ("The mere occurrence of a firearm seizure during a traffic stop, however, is not enough to establish a Second Amendment violation. Police seize and confiscate firearms routinely, and this Court will not presume that each and every one of those seizures is an automatic Second Amendment violation without specific facts indicating such.").

Accordingly, the Court recommends dismissing Plaintiff's Section 1983 right to bear arms claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b) for failure to state a claim. [13]

[13]   *See also supra* note 10 and accompanying text.

### E. Private Prosecution

To the extent Plaintiff seeks an order from this Court directing the defendants to be "charged and prosicuted for Act's and investigate RPD misconduct," (Dkt. No. 1 at 3, 13), he is not entitled to such as order because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court[.]" *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

### F. Supplemental Jurisdiction

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Having recommended dismissal of the federal claims of which the Court has original jurisdiction, it is also recommended that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.' ") (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

### V. OPPORTUNITY TO AMEND

 **\*12**  Generally, before the Court dismisses a *pro se* complaint or any part of the complaint *sua sponte*, the Court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

For reasons set forth above, the Court finds Plaintiff's complaint is subject to dismissal in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1) for failure to state a claim. However, in light of his *pro se* status, prior to outright dismissal of this action, the Court recommends that Plaintiff be given an opportunity to amend his pleading.

Plaintiff is advised that, should the District Court permit Plaintiff to file an amended complaint, and if he chooses to avail himself of an opportunity to amend, such amended pleading must cure the defects set forth above. [14] Specifically, the pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). The body of the pleading must contain sequentially numbered paragraphs containing only one act of alleged misconduct per paragraph. Fed. R. Civ. 10. No portion of any prior complaint shall be incorporated into the amended complaint and piecemeal pleadings are not permitted.

[14]    Plaintiff should not submit an amended complaint before the District Court issues a Decision and Order on this Report-Recommendation. As noted below, however, Plaintiff may file written objections to this Court's Report-Recommendations.

The Court notes that in *Gosier II*, Plaintiff alleged he was "pulled over" on June 11, 2023, by officers of the Utica Police Department "without probable cause and proceeded to illegally search [his] vehicle." *Gosier II*, No. 6:23-cv-01119 (DNH/TWD), ECF Dkt. No. 1 at 9. Plaintiff also alleged he was "maliciously prosecuted" and "arrested and charged with Criminal Possession of a Controlled Substance 7th and Aggravated Unlicensed Operation of Motor Vehicle 3rd." *Id.* Plaintiff's original complaint was *sua sponte* dismissed on initial review with leave to amend. *Id.*, ECF Dkt. Nos. 10, 12. On February 5, 2024, Plaintiff's request for an extension of time until March 16, 2024, to submit his amended complaint was granted. *Id.*, ECF Dkt. No. 19. At this juncture, it is unclear whether the subject traffic stop in *Gosier II* is the same traffic stop at issue in this action. Plaintiff should explain the relationship, if any, between the June 11, 2023, traffic stop at issue in this action and the June 11, 2023, traffic stop at issue in *Gosier II*.

## VI. CHANGE OF ADDRESS

According to information publicly available on the website maintained by the New York State Department of Corrections and Community Supervision ("DOCCS"), Willie Gosier (DIN 22B2574) was released from custody on parole on February 26, 2024. [15] Plaintiff is reminded that he must update his address with the Court immediately upon relocating. For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

[15]    *See* http://nysdoccslookup.doccs.ny.gov (last visited Mar. 8, 2024).

## VII. CONCLUSION

**\*13  WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**, and it is further

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) with **LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the District Court decline to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1016392

**ORDERED** that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; the failure to do so will result in the dismissal of his action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [16] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

[16]     If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1016392

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1307035

2024 WL 1307035
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Willie Thomas GOSIER, Plaintiff,

v.

David J. COLLINS et al., Defendants.

6:23-CV-1485
|
Signed March 27, 2024

**Attorneys and Law Firms**

WILLIE THOMAS GOSIER, Plaintiff, Pro Se, 22-B-2574, Elmira Correctional Facility, P.O. Box 500, Elmira, NY 14902.

## <u>ORDER ON REPORT & RECOMMENDATION</u>

DAVID N. HURD, United States District Judge

**\*1**  On November 29, 2023, *pro se* plaintiff Willie Thomas Gosier ("plaintiff"), who was recently released to State parole, filed this 42 U.S.C. § 1983 action alleging that the defendants violated his civil rights during a traffic stop in Rome, New York. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. Nos. 2, 3.

On March 8, 2024, U.S. Magistrate Judge Thérèse Wiley Dancks granted plaintiff's IFP Application and advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with leave to amend. Dkt. No. 4.

Plaintiff has not filed objections, and the time period in which to do so has expired. *See* Dkt. No. 4. Upon *de novo* review, the R&R is accepted and will be adopted. *See* 28 U.S.C. § 636(b)(1)(C).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty (30) days in which to file an amended complaint that conforms with the specific instructions set forth in the R&R;

4. If plaintiff timely files an amended pleading, the Clerk is directed to return the matter to Judge Dancks for further review as appropriate;

5. If plaintiff does not timely file an amended pleading, the Clerk is directed to close this matter without further Order of the Court.

IT IS SO ORDERED.

Gosier v. Collins, Not Reported in Fed. Supp. (2024)

2024 WL 1307035

**All Citations**

Not Reported in Fed. Supp., 2024 WL 1307035

---

**End of Document**                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 29 of 79

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

2023 WL 4744735
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jay BRADSHAW, Plaintiff,

v.

Anthony ANNUCCI, et al., Defendants.

9:23-CV-0602 (MAD/ML)

|

Signed July 24, 2023

**Attorneys and Law Firms**

JAY BRADSHAW, 08-A-3654, Plaintiff, pro se, Great Meadow Correctional Facility, Box 51, Comstock, NY 12821.

**DECISION and ORDER**

MAE A. D'AGOSTINO, United States District Judge

## I. INTRODUCTION

**\*1** Pro se plaintiff Jay Bradshaw commenced this action by filing a complaint asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"), and a request for preliminary injunctive relief. Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"); Dkt. No. 4 ("Preliminary Injunction Motion"). [1] Plaintiff, who is incarcerated at Great Meadow Correctional Facility, has not paid the filing fee for this action.

[1]    The complaint was also accompanied by an application seeking leave to commence a new civil action in this District as required by the Pre-Filing Order entered by the Honorable Glenn T. Suddaby on March 3, 2022. *See In re: Bradshaw*, No. 9:21-PF-0002 (GTS), Dkt. No. 4. By Decision and Order entered on May 18, 2023, the Honorable Brenda K. Sannes granted plaintiff's application to commence this action. *Id.*, Dkt. No. 10.

## II. IFP STATUS

Where a plaintiff seeks leave to proceed IFP, the Court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying, in full, the Court's filing fee of four hundred and two dollars ($402.00). [2] The Court must also determine whether the "three strikes" provision of 28 U.S.C. § 1915(g) ("Section 1915(g)") bars the plaintiff from proceeding IFP and without prepayment of the filing fee. [3] More specifically, Section 1915(g) provides as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). If the plaintiff is indigent and not barred by Section 1915(g), the Court must consider the sufficiency of the claims stated in the complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

2    "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee ... at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

3    The manifest intent of Congress in enacting Section 1915(g) was to curb prison inmate abuses and to deter the filing of multiple, frivolous civil rights suits by prison inmates. *Tafari v. Hues*, 473 F.3d 440, 443-44 (2d Cir. 2007). The question of whether a prior dismissal is a "strike" is a matter of statutory interpretation and, as such, is a question for the court to determine as a matter of law. *Tafari*, 473 F.3d at 442-43.

**\*2** In this case, plaintiff has demonstrated economic need through his IFP Application, and has filed the inmate authorization form required in the Northern District of New York. *See* Dkt. Nos. 2, 3. Thus, the Court must determine whether the "three strikes" rule of Section 1915(g) bars plaintiff from proceeding with this action IFP.

### A. Determination of "Strikes"

Plaintiff is a frequent litigator, having commenced, in addition to this action, at least twenty-five previously filed civil actions in the district courts in the Second Circuit since 2008. *See* PACER Case Locator <https://pcl.uscourts.gov/pcl/pages/search/findParty.jsf> (last visited July 18, 2023). The following is a list of those actions: (1) *Bradshaw v. McQueen*, No. 08-CV-5518 (S.D.N.Y. filed June 18, 2008); (2) *Bradshaw v. Officer Banks*, No. 09-CV-0966 (S.D.N.Y. filed Feb. 4, 2009); (3) *Bradshaw v. Brown*, No. 13-CV-4308 (E.D.N.Y. filed July 31, 2013); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166 (E.D.N.Y. filed Apr. 13, 2015); (5) *Bradshaw v. The City of New York*, No. 15-CV-4638 (S.D.N.Y. filed June 10, 2015); (6) *Bradshaw v. The City of New York*, No. 15-CV-5481 (S.D.N.Y. filed July 10, 2015); (7) *Bradshaw v. The City of New York*, No. 15-CV-7074 (S.D.N.Y. filed Sept. 8, 2015); (8) *Bradshaw v. The City of New York*, No. 15-CV-8252 (S.D.N.Y. filed Oct. 20, 2015); (9) *Bradshaw v. The City of New York*, No. 15-CV-9031 (S.D.N.Y. Nov. 17, 2015); (10) *Bradshaw v. The City of New York*, No. 17-CV-1199 (S.D.N.Y. filed Feb. 16, 2017); (11) *Bradshaw v. The City of New York*, No. 17-CV-1168 (E.D.N.Y. filed Feb. 27, 2017); (12) *Bradshaw v. The City of New York*, No. 18-CV-8215 (S.D.N.Y. filed Sept. 7, 2018) ("*Bradshaw v. The City of New York IX*"); (13) *Bradshaw v. Locke*, No. 19-CV-428 (N.D.N.Y. filed April 10, 2019) ("*Bradshaw v. Locke*"); (14) *Bradshaw v. Burns*, No. 19-CV-931 (N.D.N.Y. filed July 31, 2019) ("*Bradshaw v. Burns*"); (15) *Bradshaw v. Annucci*, No. 20-CV-6083 (W.D.N.Y. filed Feb. 6, 2020); (16) *Bradshaw v. Piccolo*, No. 20-CV-6106 (W.D.N.Y. Feb. 18, 2020); (17) *Bradshaw v. Piccolo*, No. 20-CV-6368 (W.D.N.Y. filed June 4, 2020); (18) *Bradshaw v. Annucci*, No. 20-CV-6548 (W.D.N.Y. Sept. 29, 2020); (19) *Bradshaw v. Piccolo*, No. 21-CV-6050 (W.D.N.Y. filed Jan. 19, 2021); (20) *Bradshaw v. Gordon*, No. 21-CV-0645 (N.D.N.Y. filed June 3, 2021) ("*Bradshaw v. Gordon*"); (21) *Bradshaw v. Uhler*, No. 21-CV-0776 (N.D.N.Y. filed July 8, 2021) ("*Bradshaw v. Uhler*"); and (22) *Bradshaw v. Marshal*, No. 21-CV-0826 (N.D.N.Y. filed July 21, 2021) ("*Bradshaw v. Marshal*"); (23) *Bradshaw v. Annucci*, No. 21-CV-0901 (N.D.N.Y. filed Aug. 11, 2021) ("*Bradshaw v. Annucci*"); (24) *Bradshaw v. Brand*, No. 21-CV-0942 (N.D.N.Y. filed Aug. 20, 2021) ("*Bradshaw v. Brand*"); and (25) *Bradshaw v. Bishop*, No. 22-CV-0094 (GTS/ML) (N.D.N.Y. filed Feb. 2, 2022) ("*Bradshaw v. Bishop*"). [4]

4    *Bradshaw v. Locke, Bradshaw v. Marshall,* and *Bradshaw v. Annucci* are all currently pending in this District. On December 3, 2021, judgment was entered in *Bradshaw v. Brand* dismissing the action without prejudice based on plaintiff's failure to comply with the filing fee requirement. *Id.*, Dkt. No. 6. On February 18, 2022, plaintiff's IFP status was revoked in *Bradshaw v. Gordon* and *Bradshaw v. Uhler*, and those actions were later dismissed without prejudice based on plaintiff's failure to comply with the filing fee requirement. *See Bradshaw v. Gordon*, Dkt. Nos. 67, 75; *Bradshaw v. Uhler*, Dkt. Nos. 72, 81. On April 28, 2023, judgment was entered in *Bradshaw v. Bishop* dismissing the action without prejudice based on plaintiff's failure to comply with the filing fee requirement. *Id.*, Dkt. No. 27.

**\*3** Upon review of these actions, and consistent with the determinations reached by the Honorable Brenda K. Sannes in *Bradshaw v. Locke* and *Bradshaw v. Burns*, by the Honorable Glenn T. Suddaby in *Bradshaw v. Gordon* and *Bradshaw v. Uhler*,

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

and by this Court in *Bradshaw v. Marshal*, this Court once again finds that, as of the date that plaintiff commenced this action, he had acquired at least four "strikes." [5] As a result, plaintiff's IFP Application must be denied unless it appears that the "imminent danger" exception to the "three strikes" rule set forth in Section 1915(g) is applicable to this action.

[5]     The actions in which plaintiff acquired strikes are as follows: (1) *Bradshaw v. McQueen*, No. 08-CV-5518, Dkt. No. 32 (S.D.N.Y. Feb. 11, 2010) (dismissing complaint for failure to state a claim upon which relief may be granted); (2) *Bradshaw v. Brown*, No. 13-CV-4308, Dkt. No. 52 (E.D.N.Y. May 18, 2017) (Mandate dismissing appeal of dismissal order on grounds that it lacked "an arguable basis either in law or in fact"); (3) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 58 (E.D.N.Y. Aug. 22, 2017) (dismissing complaint for failure to state a claim upon which relief may be granted); (4) *Bradshaw v. The City of New York*, No. 15-CV-2166, Dkt. No. 62 (E.D.N.Y. Nov. 16. 2018) (Mandate dismissing appeal on grounds that it lacked "an arguable basis either in law or in fact"). In *Bradshaw v. Locke*, Judge Sannes specifically discussed each of these four "strikes" in her initial Decision and Order entered on May 9, 2019. *See id.*, Dkt. No. 8.

### B. Applicability of the "Imminent Danger" Exception

The "imminent danger" exception protects a prison inmate exposed to potential serious physical injury from the consequences of his earlier mistakes in filing frivolous litigation. Generally speaking, the allegations relevant to this inquiry "are those in which [plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment." *Chavis v. Chappius*, 618 F.3d 162, 165 (2d Cir. 2010). The Second Circuit has described the nature of the Court's inquiry regarding imminent danger as follows: "although the feared physical injury must be serious, we should not make an overly detailed inquiry into whether the allegations qualify for the exception, because § 1915(g) concerns only a threshold procedural question, while [s]eparate PLRA provisions are directed at screening out meritless suits early on." *Id.* at 169-70 (*quoting Andrews v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007)) (internal quotation marks omitted).

"[F]or a prisoner to qualify for the imminent danger exception, the danger must be present when he files his complaint – in other words, a three-strikes litigant is not excepted from the filing fee if he alleges a danger that has dissipated by the time a complaint is filed." *Pettus v. Morgenthau*, 554 F.3d 293, 296 (2d Cir. 2009); *see also Polanco v. Hopkins*, 510 F.3d 152 (2d Cir. 2007); *Akassy v. Hardy*, 887 F.3d 91, 96 (2d Cir. 2018). However, "allegations of past violence can satisfy the imminent danger exception when, for example, the past harms are part of an ongoing pattern of acts." *Carter v. New York State*, No. 20-CV-5955, 2020 WL 4700902, at *1 (S.D.N.Y. Aug. 12, 2020) (citing *Chavis*, 618 F.3d at 170 (holding that "[a]n allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception.")).

**\*4**  In addition, "§ 1915(g) allows a three-strikes litigant to proceed [IFP] only when there exists an adequate nexus between the claims he seeks to pursue and the imminent danger he alleges." *Pettus*, 554 F.3d at 296. In deciding whether such a nexus exists, the Second Circuit has instructed the courts to consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would redress that injury." *Id.* at 298-99.

In this case, the complaint alleges that at the time of filing, plaintiff had been continuously confined in the Residential Rehabilitation Unit ("RRU") for one year, where he was scheduled to remain housed for at least an additional year. Compl., ¶¶ 221, 233, 248, 259-260, 303. The complaint further alleges that plaintiff is confined in his cell for all but two hours each day, and had not received, throughout the year that he was confined in the RRU, an individual rehabilitation plan or private mental health therapy, despite a history of self-harm and ongoing anxiety and depression associated with his confinement status. *Id.*, ¶¶ 307-313, 332-340. The complaint also identifies several incidents of plaintiff being assaulted by other inmates, alleges that he is likely to be harmed in the future if he continues to be placed in a double-bunk cell, and further alleges that he was informed three days before the complaint was filed that he would be placed in a double-bunk cell "as soon as possible." *Id.*, ¶¶ 96-179.

At this stage of the proceeding, the Court finds that the allegations in the complaint plausibly suggest that plaintiff was "under imminent danger of serious physical injury" when he signed his complaint on April 17, 2023. *See, e.g., Lindsey v. Hoem*, 799 Fed. App'x 410, 412 (7th Cir. 2020) ("Lindsey's first complaint alleges that prison staff have placed Lindsey in danger of imminent physical harm by failing to treat his PTSD. Suicidal ideation and a risk of self-harm, particularly for a mentally ill prisoner like Lindsey in prolonged segregation, satisfy the statutory imminent-danger exception that the court adopted in its sanction order.") (citing, *inter alia, Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017)); *Abreu v. Lira*, No. 12-CV-1385 (NAM/DEP), Dkt. No. 5 (N.D.N.Y. Feb. 28, 2013) (granting "three strikes" plaintiff leave to proceed in forma pauperis, finding that plaintiff's allegations that he was "denied adequate medical care for his serious medical and mental health needs at Upstate Correctional Facility" were sufficient to plausibly suggest that he was "under imminent danger of serious physical injury" when the action was filed). Thus, plaintiff is granted leave to proceed IFP in this action.

The Court notes that this is a preliminary finding which defendants are entitled to challenge or refute in future filings. Thus, plaintiff's IFP status will be revoked if, as the case progresses, it is determined that he did not face "imminent danger" when he commenced this action or is otherwise not entitled to proceed IFP.

## III. INITIAL REVIEW OF THE COMPLAINT

### A. Governing Legal Standard

Having found that plaintiff meets the financial criteria for commencing this action IFP, and because he seeks relief from officers and employees of governmental entities, the Court must now consider the sufficiency of the allegations set forth in his complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e). Similarly, Section 1915A directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that Sections 1915(e) and 1915A are available to evaluate prisoner pro se complaints).

**\*5** Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95-CV-4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

Thus, although the court has the duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond," *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted), the court also has a responsibility to determine whether plaintiff may properly proceed with this action.

**B. Summary of the Complaint**

Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Upstate Correctional Facility ("Upstate C.F."), in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

The forty-five (45) page handwritten complaint, which is generally organized by claim, alleges that on multiple occasions between June, 2021 and April, 2023, corrections officials subjected plaintiff to unnecessary force, failed to protect him from assaults by other inmates, issued him false misbehavior reports that resulted in excessive restrictive confinement, deprived him of constitutionally adequate conditions-of-confinement, denied him access to mental health treatment, interfered with his mail, subjected him to retaliatory cell searches, and deprived him of personal property. *See generally*, Compl. The following facts are set forth as alleged by plaintiff in his complaint.

**1. Use-of-Force Incidents Involving Corrections Officials**

The complaint identifies the following use-of-force incidents involving corrections officials: (1) defendant Corrections Officer Osborn "maliciously slamm[ing] plaintiff's hand in the cell hatch on June 18, 2021[,]" Compl., ¶ 16 (hereinafter, "the First Assault"); (2) defendant Corrections Sergeant John Doe #1 forcibly pressing plaintiff into a wall while handcuffed, despite plaintiff's complaints of pain, on June 24, 2021, Compl., ¶ 17 (hereinafter, "the Second Assault"); (3) defendant Corrections Officer Phillips "slamm[ing]" plaintiff to the floor of his cell and placing him in a "choke hold" while defendant Corrections Officer Tyler "searched plaintiff's anal cavity for contraband" on July 1, 2021, Compl., ¶¶ 19-22 (hereinafter, "the Third Assault"); (4) defendant Osborn "intentionally and maliciously slamm[ing] plaintiff's hand with the cell door hatch" on September 27, 2021, Compl., ¶ 31 (hereinafter, "the Fourth Assault"); (5) defendant Corrections Officer Menard "intentionally and maliciously slamm[ing] plaintiff's hand with the cell door hatch" on December 5, 2021, Compl., ¶ 37 (hereinafter, "the Fifth Assault"); (6) defendant Corrections Officer Bailey "grab[bing]" plaintiff by the back of his coat and twisting his waist shackles while exiting a bus on December 20, 2021, and Bailey and defendant Corrections Officer Trombley thereafter pushing plaintiff and squeezing his handcuffs during the escort back to his cell, in the presence of defendant Corrections Sergeant Cymbrak, Compl., ¶¶ 40-42 (hereinafter, "the Sixth Assault"); (7) defendant Corrections Officers Mitchell and Chase punching plaintiff in his cell and defendant Corrections Sergeant Marshall spraying plaintiff in the eyes with a foreign substance on January 30, 2022, while defendant Corrections Lieutenant Gettman, Corrections Officer Morrison, and Corrections Sergeant John Doe #2 stood by, Compl., ¶¶ 56-60 (hereinafter, "the Seventh Assault"); (8) defendant Corrections Officer John Doe #3 tightening plaintiff's handcuffs and slamming him into a wall, and defendant Osborn pushing plaintiff into a wall during an escort on April 30, 2022, Compl., ¶¶ 71-73 (hereinafter, "the Eighth Assault"); (9) defendant Osborn threatening plaintiff with harm, defendants Gettman, Corrections Sergeant Plonka, and Corrections Captain Gravlin disregarding the reported threat, defendants Osborn and Corrections Officer Robare thereafter macing and restraining plaintiff in his cell, and defendants Osborn and Corrections Officer Carter assaulting plaintiff in a different cell, in the presence of defendants Plonka and Corrections Officer John Doe #4, on December 12, 2022, Compl., ¶¶ 76-84 (hereinafter, "the Ninth Assault").

**\*6** The complaint also alleges that (1) defendant Osborn initiated the First Assault in retaliation for plaintiff filing a grievance, Compl., ¶ 16, (2) defendant Corrections Officer Hooper, defendant Corrections Sergeant McGee, and defendant Phillips each authored false reports regarding the Third Assault in an effort to "conceal" the wrongdoing, Compl., ¶¶ 23, (3) defendant Menard initiated the Fifth Assault in retaliation for plaintiff filing a grievance, Compl., ¶ 37, (4) defendant Trombley participated in the Sixth Assault in retaliation for plaintiff filing a lawsuit against him, Compl., ¶ 43, (5) defendants Bailey and Trombley

engaged in retaliatory acts of intimidation against plaintiff following the Sixth Assault, Compl., ¶¶ 46-50, (6) defendant Marshall directed "retaliatory search[es]" of plaintiff's cell on January 6 and January 30, 2022, prior to the Seventh Assault, Compl., ¶¶ 53, 56, (7) defendant Chase engaged in acts of intimidation against plaintiff following the Seventh Assault, Compl., ¶¶ 62-69, (8) defendants Robare, Osborn, Plonka, Gravlin, and Gettman "conspired to conceal" the Ninth Assault "by falsely reporting the incident[,]" Compl., ¶ 81, and (9) defendants Upstate Correctional Facility Superintendent Uhler, Deputy Superintendent of Security Bishop, DOCCS Special Investigators Nichols and Holmes, and DOCCS Commissioner Annucci failed to protect plaintiff from assaults that occurred after July 1, 2021, by denying his grievances and failing to take "remedial action" against the involved officials. Compl., ¶¶ 23-26, 34-35, 38-39, 44-46, 51-52, 70-71, 74-75.

### 2. Assaults By Other Inmates

### a. First Inmate Assault

On April 22, 2022, plaintiff returned to his cell from a program to find "several officers standing outside" and "Inmate J ... locked in the recreation cell." Compl., ¶ 96. "Inmate J immediately told plaintiff to tell the officers that plaintiff cannot stay in the cell, and threatened to beat-up plaintiff while calling [him] a 'rapo.' " *Id.*, ¶ 97. Defendant Corrections Sergeant McQuinn and defendant Corrections Officer Waite "disregarded Inmate J's repeated threats against plaintiff[,]" with McQuinn stating that "Bishop approved the double-bunk." *Id.*, ¶ 98. Defendants McQuinn and Waite then "exited the gallery before directing the recreation cell door to be open[ed] to allow Inmate J to enter the cell[.]" *Id.*, ¶ 99.

Upon entering the cell, Inmate J "immediately attacked plaintiff" and did so for a second time "when the officer arrived to serve lunch." Compl., ¶ 99. Plaintiff submitted a grievance regarding the incident, which was "forwarded" to defendants Uhler and Bishop for resolution. *Id.*, ¶ 100. The grievance was denied and plaintiff was thereafter placed in another double-bunk cell and "assaulted by other prisoners." *Id.*

### b. Second Inmate Assault

On April 25, 2022, defendants Bishop and Corrections Sergeant Fletcher "recommended and directed" corrections officers to remove plaintiff from his cell "under the guise of a cell search" and place him in a cell with Inmate Tullis, "a known ... gang member and undercover homosexual" with "a history of violence against other prisoners in double-bunk cells." Compl., ¶ 102. Each day between April 26 and April 29, 2022, Inmate Tullis threatened to assault plaintiff and forced him to engage in sexual activity. *Id.*, ¶¶ 103-106. On April 29, 2022, defendants Osborn and Corrections Lieutenant Rowe "stood before the door" while plaintiff was sexually assaulted, and thereafter, defendant Osborn told plaintiff that the behavior did not "look good." *Id.*, ¶ 106.

On April 30 and May 1, 2022, Inmate Tullis again forced plaintiff to engage in sexual activity. Compl., ¶¶ 107-108. On May 2, 2022, plaintiff's grievance regarding the sexual assaults was "received by the Grievance Supervisors[,] who notified defendant [Corrections Captain] Veneske." Compl., ¶ 108. In response, defendant Veneske "directed" defendant Chase and Corrections Officer Welch (not a party) "to attack plaintiff at about 10:15 a.m." *Id.*

At 5:00 p.m., Inmate Tullis again forced plaintiff to engage in sexual activity. Compl., ¶ 109. One hour later, plaintiff "called a Prison Rape Crisis Hotline and reported the sexual assault," and defendant Veneske thereafter removed plaintiff from the cell. *Id.*, ¶¶ 110-111. Although plaintiff submitted grievances regarding the sexual assaults, which were reviewed by defendants Bishop and Veneske and "forwarded to" defendants Nichols and Holmes for investigation, he "continued to be placed in a double-bunk cell and assaulted by other prisoners." *Id.*, ¶¶ 111-112.

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 35 of 79

**Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)**

2023 WL 4744735

### c. Third Inmate Assault

 **\*7**  On May 2, 2022, plaintiff filed a grievance regarding a "retaliatory search" carried out by defendant Corrections Sergeant Keleher on May 1, 2023. Compl., ¶ 113. On May 5, 2022, defendant Keleher directed two searches of plaintiff's cell and then recommended, and received approval from defendants Bishop and Corrections Lieutenant Debyah, for Inmate Samuel to be double-bunked with plaintiff. *Id.*, ¶ 114. Defendants Keleher, Debyah, Gravlin, and Bishop "denied plaintiff's request for protective custody." *Id.*, ¶ 115. Yet these officials "were aware that Inmate Samuel had a history of violence against other prisoners [and] was a Blood gang member," and plaintiff "has a history of being victimized by Bloods and labeled a snitch." *Id.*, ¶ 121.

Inmate Samuel was "forced by defendant Keleher into the cell and assaulted while handcuffed by defendant Osborn." Compl., ¶ 117. Inmate Samuel stated to these officials that he would not stay in the cell overnight and "immediately threatened to fight plaintiff[.]" *Id.* Shortly thereafter, Inmate Samuel "choked plaintiff from behind while sitting at the desk," causing plaintiff to "pass[ ] out[.]" *Id.*, ¶ 118. Inmate Samuel then "hog-tied plaintiff's hands behind his back and his legs, and dragged plaintiff to the recreation cell." *Id.*

Defendants Keleher and Corrections Officer Harmer subsequently entered the cell and "maliciously" stepped on plaintiff's legs and feet while he was handcuffed, in order to untie him. Compl., ¶ 119 (the "Tenth Assault"). Thereafter, defendants Keleher, Harmer, Osborn, and Gravlin "conspired to cover up the incident" by "falsely report[ing]" that "a cell fight" occurred, and omitting from the report any reference to defendants Keleher and Harmer entering the cell to untie plaintiff and stepping on him. *Id.*, ¶ 120. Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 122. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 123. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double-bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 122-123.

On May 13, 2022, "[a]s a means of retaliation for reporting sexual and physical assaults by other prisoners," defendant North "amended the Directive for double-cell housing assignments regarding victim prone inmates" to "permit inmates with a pattern of being victimized by other inmates to be double-bunk[ed] at the Deputy of Security's discretion." *Id.*, ¶ 124.

### d. Fourth Inmate Assault

On June 8, 2022, defendants Gravlin and Rowe recommended plaintiff to be double-bunked with Inmate Johnson, which defendant Bishop approved. Compl., ¶ 125. Once they were in a cell together, Inmate Johnson threatened to attack plaintiff and harassed him about his criminal case and altercation with Inmate Samuel. *Id.*, ¶ 126. On July 17, 2022, Inmate Johnson was transferred out of Upstate Correctional Facility. *Id.*, ¶ 127. Apparently around this time, plaintiff filed a grievance requesting that he not be double-bunked, wherein he referenced the physical and sexual assaults he had experienced. *Id.*

Thereafter, defendant Osborn and Rowe recommended that plaintiff be placed in a double-bunk cell with Inmate X, which defendant Bishop approved, even though Inmate X "appeared to need emergency mental health care and had a history of violence[.]" Compl., ¶ 128. The same day that Inmate X was placed in a cell with plaintiff, he was removed. *Id.*

On August 1, 2022, plaintiff filed a grievance regarding officials placing rival gang members in double-bunk cells together, which "increases the violence among prisoners" at the facility. Compl., ¶ 129. On August 5, 2022, defendants Fletcher, Gravlin, and Bishop assigned plaintiff to be celled with Inmate Y, who "immediately" attacked plaintiff in the cell and was removed. *Id.*, ¶¶ 130-131. Defendants Fletcher, Gravlin, and Bishop "were aware that Inmate Y had a history of violence against prisoners,

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 36 of 79

2023 WL 4744735

was a Blood who could not remain in a double cell with plaintiff because he has a sex offense, and plaintiff has a history of being victimized by Bloods whom [sic] labeled him a snitch." *Id.*, ¶ 132.

**\*8** Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 133. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 134. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 133-134.

### e. Fifth Inmate Assault

On August 11, 2022, defendant Gravlin recommended that Inmate Jones be placed in a cell with plaintiff, which defendant Bishop approved even though Inmate Jones was a "known Blood" with a "history of violence against prisoners, and [weighed] about 220 pounds[.]" Compl., ¶ 133. Inmate Jones did not assault plaintiff, and was removed from the cell due to a pre-existing injury. *Id.*, ¶ 134. Defendants Gravlin and Bishop denied plaintiff's request for protective custody. *Id.*, ¶ 135.

On August 15, 2022, defendants Fletcher and Gravlin recommended that Inmate Burrell be placed in a cell with plaintiff, which defendant Bishop approved even though Inmate Burrell was a "known Blood" and was "involved in a cell fight immediately before being placed in the cell with plaintiff." Compl., ¶ 136. Inmate Burrell informed plaintiff that Fletcher and Gravlin wanted plaintiff out of the cell, and thereafter "attacked" him twice, including once in the presence of defendant Harrigan. *Id.*, ¶¶ 136-37.

Plaintiff submitted a grievance regarding this incident (and others), which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 141. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 142. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 141-142.

### f. Sixth Inmate Assault

In November, 2022, defendants Uhler, Bishop, and "Classification and Movement" Officers John Doe #1 and John Doe #2 "conspired to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell[.]" Compl., ¶ 145. On December 9, 2022, plaintiff was placed in a cell with Inmate Jones, who "punch[ed] plaintiff several times and choke[d] [him]." *Id.*, ¶ 146. Defendant Corrections Officer Orbegozo and defendant Corrections Sergeant John Doe #1 arrived at the scene "while plaintiff was being attacked[,]" but elected to leave plaintiff in the cell. *Id.*, ¶ 147.

On the morning of December 10, 2022, Inmate Jones attacked plaintiff again. Compl., ¶ 148. Plaintiff was thereafter removed from the cell, having suffered injuries to his lower back and spine. *Id.*, ¶¶ 148-149.

### g. Seventh Inmate Assault

On December 12, 2022, defendants Osborn, Plonka, Gettman, and Gravlin "directed plaintiff to exit his cell for a search" and then "moved [him] to a double cell as a means of retaliation and with the approval of defendant Bishop." Compl., ¶ 150. Plaintiff was placed in a cell with Inmate Flenders, "who had a history of violence against other prisoners." *Id.*, ¶ 151.

Inmate Flenders "threatened to attack plaintiff[,]" which was reported to defendants Osborn and Plonka, who ignored the information. Compl., ¶ 152. Thereafter, Inmate Flenders "punched plaintiff several times," which was again reported to

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 37 of 79
**Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)**
2023 WL 4744735

defendants Osborn and Plonka. *Id.*, ¶ 153. After a second assault on plaintiff by this inmate, defendant Osborn arrived at the cell and "repeatedly" sprayed plaintiff with mace. *Id.*, ¶ 154. Defendants Gravlin, Osborn, Carter, and Plonka then removed plaintiff from the cell and relocated him to a double-bunk cell with Inmate Williams, with the approval of defendant Bishop, even though this inmate also "had a history of violence against prisoners" and was "a known Blood gang member[.]" *Id.*, ¶ 155. Inmate Williams "attacked plaintiff" three times, causing him "serious injuries[.]" *Id.*, ¶ 156.

**\*9** Plaintiff submitted a grievance regarding this incident and the Sixth Inmate Assault, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 158. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 159. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 158-159.

Defendants Nurse Sturgen and Nurse Lewis also "disregarded plaintiff's medical conditions" and failed to exempt him from further placement in a double-bunk cell. Compl., ¶ 160.

### h. Eighth Inmate Assault

On January 23, 2023, plaintiff was housed in a cell with Inmate Z, who informed the gallery officer (not a party) that he did not want to remain in the cell with plaintiff and intended to "fight" him. Compl., ¶ 162. The officer advised plaintiff that defendant Corrections Sergeant Sharpe would address the situation in the morning and had him remain in the cell. *Id.* At some point, plaintiff submitted letters to defendant Dumas, which indicated that he had been assaulted with a "makeshift weapon" by Inmate Z, who threatened to attack plaintiff again. *Id.*, ¶ 163. Defendant Dumas "disregarded the letters" and "continued [to] pass plaintiff" at his cell. *Id.* Plaintiff also informed defendant Sturgen about the threat during a cell visit, and this official stated that he did not stop by for that issue, and walked away. *Id.*

Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 167. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 168. Plaintiff's grievance was denied, and his complaint was dismissed, and he continued to be placed in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 167-168.

Defendant Lewis also "disregarded plaintiff's medical condition[,] which should have precluded [him] from double-bunking[.]" Compl., ¶ 169.

### i. Ninth Inmate Assault

On March 6, 2023, defendants Gravlin, Corrections Officer Hollenbeck, and Corrections Sergeant DeCosse recommended plaintiff's placement in a double-bunk cell with Inmate Davis, which defendant Bishop approved even though Inmate Davis was "over 300 pound[s]" and "a known Blood with a[n] extensive history of violence against other prisoners[.]" Compl., ¶ 171. The next day, plaintiff informed a counselor about his cell placement and fear for his safety. *Id.*, ¶ 172. Five days later, Inmate Davis reached an agreement with defendant Hollenbeck to move him to a larger cell. *Id.*, ¶ 173. Roughly one hour after this agreement was reached, Inmate Davis "angerly [sic] asked [defendant Corrections] Officer Connor Gordon where is Hollenbeck and preceded [sic] to attack plaintiff by grabbing [him] by the sweater and swing[ing] and slamming [him] [in]to the door and ground[,] then cutting [him] twice on the left side of his face." *Id.*, ¶ 174. As a result of defendant Bishop's failure to "do a reassessment" following this incident, plaintiff was relocated to a cell with another gang member who was involved in a cell fight minutes before plaintiff arrived. *Id.*, ¶ 175.

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 38 of 79

Plaintiff submitted a grievance regarding this incident, which was "forwarded to defendant Uhler for resolution." *Id.*, ¶ 178. Plaintiff also submitted a "complaint" to the Inspector General's Office detailing the incident, which was forwarded to defendants Nichols and Holmes "for investigation and remedial action." *Id.*, ¶ 180. Plaintiff's grievance was denied, and his complaint was dismissed, and he continues to be at risk of placement in a double bunk cell where he was assaulted by other prisoners. *Id.*, ¶¶ 178, 180.

**\*10** Following this incident, defendants DeCosse and Bishop denied plaintiff's request for protective custody. Compl., ¶ 179.

Defendant Lewis also "disregarded plaintiff's medical condition[,] which should have precluded [him] from double-bunking[.]" Compl., ¶ 182.

On April 14, 2023, defendants Gravlin, Bishop, and Corrections Sergeant Jubert "had plaintiff assigned to a cell with [a] prisoner [that] medical did not clear for 'TB' test[,]" and defendant Jubert informed plaintiff that he would be placed in a double-bunk cell "as soon as possible." Compl., ¶ 179.

Defendant DOCCS Commissioner Annucci "enacted or approved the double-celling policy that plaintiff has been subjected to" during his incarceration. Compl., ¶ 185.

### 3. Discipline

The complaint identifies the following incidents where plaintiff was issued a misbehavior report that was allegedly based on false charges and/or resulted in a disciplinary sanction of restrictive confinement.

#### a. First Disciplinary Sentence

On or about November 1, 2021, plaintiff was issued two misbehavior reports charging him with, among other things, two sex offenses based on allegations that he made sexually charged statements to two corrections officials in response to their orders. Compl., ¶¶ 187-189. On November 9, 2021, defendant Commissioner Hearing Officer S. Martin presided over plaintiff's combined disciplinary hearing ("the First Disciplinary Hearing") and found him guilty of all charges except interference in the first report and violent conduct in the second report. *Id.*, ¶ 190. As a result of improperly finding plaintiff guilty of two sex offenses even though plaintiff's conduct did not constitute a sex offense, defendant Martin sentenced plaintiff to 90 days confinement in the special housing unit ("SHU"). *Id.* Plaintiff appealed defendant Martin's disciplinary determination, which was affirmed by defendants Uhler and DOCCS Director of Special Housing Unit Rodriguez. *Id.*, ¶¶ 191-193. At the time the sanction was imposed, plaintiff was already serving a 360-day SHU sanction. *Id.*, ¶ 195. Plaintiff served the 90-day SHU sanction between December 3, 2022 and March 3, 2023. *Id.*, ¶ 198.

#### b. Second Disciplinary Sentence

On November 16, 2021, plaintiff "reported to medical staff and [a] sergeant that defendant Menard slammed his hand and kept it wedged in the hatch on the cell door." Compl., ¶ 199. Two days later, plaintiff was issued a misbehavior report that charged him with various rules violations based on his alleged refusal of a direct order to return a tray to defendant Menard on November 16, 2021. *Id.*, ¶ 200.

On December 1, 2021, defendant Institutional Steward Terriah presided over plaintiff's disciplinary hearing ("the Second Disciplinary Hearing"), found plaintiff guilty of all charges in the misbehavior report, and imposed a penalty of 15 days of SHU confinement. Compl., ¶ 202. Plaintiff appealed the disciplinary determination on the grounds that "SHU could not be

Case 1:25-cv-01435-AJB-TWD   Document 4   Filed 12/01/25   Page 39 of 79
Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

imposed for the allege[d] offenses" in the misbehavior report. *Id.*, ¶ 203. Defendant Rodriguez failed to decide plaintiff's appeal within the 60-day deadline, which is "considered a constructive denial." *Id.*, ¶ 204. Plaintiff served the 15-day SHU sanction between March 3 and March 18, 2023. *Id.*, ¶ 209. Defendant Rodriguez then "extended" plaintiff's SHU sanction by another 30 days to April 12, 2023. *Id.*

### c. Third Disciplinary Sentence

**\*11** On November 21, 2021, plaintiff submitted a grievance regarding defendant Menard issuing him a false misbehavior report on November 18, 2021. Compl., ¶ 211. On December 5, 2021, defendant Menard issued plaintiff a false misbehavior report charging him with various rules violations related to refusing direct orders and creating a disturbance in his cell. *Id.*, ¶¶ 212-213.

On December 23, 2022, defendant Terriah presided over plaintiff's disciplinary hearing ("the Third Disciplinary Hearing"), found plaintiff guilty of all charges in the misbehavior report, and imposed a penalty of 30 days of SHU confinement. Compl., ¶ 214. Plaintiff appealed the disciplinary determination on the grounds that the misbehavior report was "false and retaliatory" and "SHU confinement could not be imposed for the alleged offenses" in the misbehavior report. *Id.*, ¶ 215. On February 8, 2022, defendant Rodriguez modified the hearing decision by dismissing the interference charge, but failed to dismiss the improper SHU sanction. *Id.*, ¶ 216. Plaintiff is "expected to serve the 30 day SHU sanction from March 18, 2023 to April 17, 2023." *Id.*, ¶ 221.

### d. Fourth Disciplinary Sentence

On January 13, 2022, plaintiff filed a grievance regarding a "retaliatory cell search" and threat made to him by defendant Marshall in the presence of defendant Gettman. Compl., ¶ 223. On January 30, 2022, defendant Marshall issued plaintiff a misbehavior report, which charged him with assault on staff and other rules violations in connection with a use-of-force incident. *Id.*, ¶ 224.

At the conclusion of plaintiff's disciplinary hearing on February 17, 2022 ("the Fourth Disciplinary Hearing"), defendant Bishop found plaintiff guilty of the charges in the misbehavior report and imposed a penalty of 240 days of SHU confinement, and loss of package and commissary privileges. Compl., ¶ 226. On February 24, 2022, defendant Uhler reviewed and affirmed the disciplinary determination. *Id.*, ¶ 278. On April 21, 2022, defendant Rodriguez modified the SHU sanction to 180 days and otherwise affirmed the hearing decision. *Id.*, ¶ 229. Plaintiff is expected to either start or finish serving the 180-day SHU sanction on October 14, 2023. *Id.*, ¶ 233.

### e. Fifth Disciplinary Sentence

In "early April 2022," plaintiff filed a grievance and motion for injunctive relief in an ongoing federal lawsuit about his placement in a double-bunk cell. Compl., ¶ 235. On April 22, 2022, plaintiff was issued two misbehavior reports in connection with his altercation with Inmate J. *Id.*, ¶¶ 236-238.

At the conclusion of plaintiff's disciplinary hearing on April 26, 2022 ("the Fifth Disciplinary Hearing"), defendant Bishop found plaintiff guilty of the charges in the two misbehavior reports and imposed a penalty of 90 days of SHU confinement and loss of package and commissary privileges. Compl., ¶ 240. On April 29, 2022, defendant Uhler reviewed and affirmed the disciplinary determination even though SHU could not be imposed for the charged offenses pursuant to New York Correction Law § 137. *Id.*, ¶¶ 241-242. On July 12, 2022, defendant Rodriguez reviewed and affirmed the disciplinary determination. *Id.*, ¶ 243. Plaintiff is expected to serve the disciplinary sentence sometime between October, 2023 and January, 2024. *Id.*, ¶ 248.

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

#### f. Sixth Disciplinary Sentence

On December 10, 2022, plaintiff was issued a misbehavior report for fighting with his cellmate. Compl., ¶ 249. At the conclusion of plaintiff's disciplinary hearing on December 23, 2022 ("the Sixth Disciplinary Hearing"), defendant Commissioner Hearing Officer LaPlant found plaintiff guilty of the charges in the misbehavior report and imposed a penalty of 30 days of SHU confinement and one month loss of good time credits. *Id.*, ¶ 251. On January 9, 2023, plaintiff appealed the disciplinary determination on the grounds that SHU could not be imposed for the charged violations, and the imposed penalties were retaliatory. *Id.*, ¶ 252. Defendant Rodriguez failed to decide plaintiff's appeal within 60 days in accordance with DOCCS' regulations "as a means to keep plaintiff confined in segregation." *Id.*, ¶ 253. Plaintiff is expected to serve this SHU sanction sometime between February and June, 2024. *Id.*, ¶¶ 259-260.

**\*12** Each of the imposed SHU sanctions were authorized and/or ignored by defendant Annucci. Compl., ¶ 260.

#### 4. Confinement Conditions

In addition to the assaults discussed above, the complaint identifies the following "atypical" conditions of confinement experienced by plaintiff between May, 2021 and April 11, 2022: (1) a deprivation of nine out of twelve meals between May 28 and May 31, 2021, Compl., ¶ 262; (2) a deprivation of ten out of twelve meals between July 1 and July 4, 2021, and numerous additional meal deprivations between July 6, 2021 and April, 2022, Compl., ¶ 264; (3) inadequate heating due to the heat vent being turned off and cold air being blown in to plaintiff's housing unit, at the direction of defendant Gravlin, between September 25 and October 2, 2021, Compl., ¶ 267; (4) defendant Corrections Officer Austin Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021, Compl., ¶ 269; (5) defendant Corrections Sergeant Jane Doe "compell[ing] plaintiff to remain outside to stand in the freezing cold weather for about five or six hours while the officers and defendant Jane Doe remained inside the facility or on the bus with other prisoners[,]" Compl., ¶ 268; (6) the deprivation of a change of underwear and clothing between December 20, 2021 and January 23, 2022, Compl., ¶ 270; (7) defendant Sturgen forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021 based on his refusal to "take a COVID-19 test[,]" Compl., ¶ 271; (8) searching plaintiff's cell and at times placing him in unclean cells without cleaning supplies at various points between May 25, 2021 and April 11, 2022, in response to him filing grievances, Compl., ¶¶ 272-290; (9) defendants Corrections Officers John Doe #5, Lamica, Locke, Keating, John Doe #6, and Ayer denying plaintiff access to legal mail on multiple dates between August and December, 2021, Compl., ¶¶ 291-295; (10) defendants Veneske and Gravlin denying plaintiff weekly phone calls on four separate occasions between July and December, 2021, Compl., ¶ 297; and (11) plaintiff's continuous confinement in the SHU between January 10, 2018 and April 12, 2022, Compl., ¶ 298.

Between April 12, 2022 and April 12, 2023, plaintiff was continuously confined in the RRU, where his confinement conditions were "identical to his confinement in the SHU, with the exception of approximately two hours of programming." Compl., ¶ 303. In addition to the assaults discussed above, the complaint identifies the following "atypical" conditions of confinement experienced by plaintiff during this time: (1) denial of "congregate religious services [and] recreation[,]" Compl., ¶ 303; (2) defendants Dumas, Gravell, and Mental Health Professionals Jane Doe #1 and Jane Doe #2 refusing to speak with plaintiff during rounds or place his name on callouts for private interviews between October 1, 2022 and April 12, 2023, Compl., ¶ 308; (3) defendant Jane Doe #2 disregarding plaintiff's request for an intake interview and stated concerns regarding depression and anxiety on April 3, 2023, Compl., ¶ 310; (4) defendant Jane Doe #1 failing to schedule plaintiff for a private mental health interview and, along with defendant Dumas, ignoring plaintiff's complaints regarding a lack of mental health care on April 12, 2023, Compl., ¶ 312; (5) defendants Gravlin, Veneske, Uhler, and Bishop denying plaintiff in-cell cleaning supplies between April and September, 2022, and December, 2022 and January, 2023, Compl., ¶¶ 315-318; (6) defendants Fletcher and Keleher directing retaliatory searches of plaintiff's cell between April 25 and May 5, 2022, which defendants Uhler and Bishop failed to remedy, Compl., ¶¶ 319-326; (7) defendant Deputy Superintendent of Programs Stickney depriving plaintiff of a personalized rehabilitation plan and limiting his out-of-cell programming to two hours per day, Compl., ¶¶ 332-340; (8) defendants Stickney

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 41 of 79
2023 WL 4744735

and Bishop denying plaintiff weekly congregate services each week between April 12, 2022 and April 12, 2023, Compl., ¶¶ 341-342; (9) defendant Annucci denying plaintiff a nutritionally adequate diet "as a cost saving measure" since 2019, Compl., ¶¶ 343-347; (10) denial of tablet services, packages, congregate recreation, access to the law library, daily showers, full access to commissary services, and the opportunity to appear at grievance hearings throughout plaintiff's placement in the RRU, Compl., ¶¶ 348-356; (11) defendant Bishop forcing plaintiff to share a cell with another inmate in excess of sixty days, Compl., ¶¶ 357-359; (12) defendants Uhler and Bishop requiring plaintiff to wear handcuffs and shackles for all out-of-cell movement, and to remain shackled during programs, Compl., ¶¶ 361-367; and (13) defendants Uhler and Bishop denying plaintiff access to certain personal property throughout his placement in the RRU, Compl., ¶¶ 371-372.

### 5. Plaintiff's Claims

**\*13** Liberally construed, the complaint asserts the following claims for relief against the named defendants in their individual capacities: (1) First Amendment retaliation claims against defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, North, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Uhler, Rowe, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Sturgen, Austin Martin, Lamica, Locke, and Keating; (2) First Amendment mail tampering claims against defendants Corrections Officer John Doe #5, Lamica, Locke, Keating, Lord, John Doe #6, and Ayer; (3) First Amendment free exercise claims against defendants Bishop, Stickney, Uhler, and Annucci; (4) Eighth Amendment excessive force and failure-to-intervene claims against defendants Osborn, Corrections Sergeant John Doe #1, Phillips, Tyler, Menard, Bailey, Trombley, Cymbrak, Mitchell, Chase, Marshall, Gettman, Morrison, Corrections Sergeant John Doe #2, Corrections Officer John Doe #3, Gravlin, Robare, Carter, Corrections Officer John Doe #4, Plonka, Keleher, and Harmer; (5) Eighth Amendment failure-to-protect claims against defendants McQuinn, Waite, Bishop, Uhler, Fletcher, Osborn, Rowe, Veneske, Nichols, Holmes, Annucci, Keleher, Debyah, Gravlin, North, Harrigan, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Orbegozo, Corrections Sergeant John Doe #1, Plonka, Gettman, Carter, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, and Jubert; (6) Eighth Amendment conditions-of-confinement claims against defendants Gravlin, Uhler, Bishop, Sergeant Jane Doe, Austin Martin, Marshall, Sturgen, and Veneske based on COVID-19 quarantine requirements, unhygienic conditions, inadequate heating and clothing, and inadequate sleeping accommodations; (7) an Eighth Amendment conditions-of-confinement claim against defendant Annucci based on plaintiff's receipt of an inadequate diet; (8) Eighth Amendment conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; (9) Eighth Amendment conditions-of-confinement claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU; (10) Eighth Amendment medical indifference claims against defendants Dumas, Gravell, Jane Doe #1 and Jane Doe #2 based on denying plaintiff access to adequate medical and mental health treatment; (11) Fourteenth Amendment disciplinary due process claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, and LaPlant; (12) Fourteenth Amendment due process claims against defendants Gravlin and Veneske based on denying plaintiff access to phone calls; (13) Fourteenth Amendment due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci based on the nature of plaintiff's confinement in the RRU; and (14) conspiracy claims against defendants Tyler, Phillips, Hooper, McGee, Robare, Gravlin, Keleher, Harmer, and Osborn.

Plaintiff seeks an award of money damages and injunctive relief. Compl. at 45. For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

### C. Analysis

Plaintiff seeks relief pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights").

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

"Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

### 1. Hastings, Peterson, and Spinner

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

The Second Circuit recently clarified that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, " 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' " *Id.* (quoting *Iqbal*, 556 U.S. at 676).

"Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Cipriani v. Buffardi*, No. 9:06-CV-889 (GTS/DRH), 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) (citing *Gonzalez v. City of New York*, No. 97-CV-2246, 1998 WL 382055, at *2 (S.D.N.Y. July 9, 1998)).

Here, plaintiff names Corrections Officers Hastings and Peterson and Steward Spinner as defendants without any allegations of wrongdoing by these individuals in the body of the complaint. Indeed, it is entirely unclear how and when, if at all, these officials may have violated plaintiff's federal rights. *See generally*, Compl.

Accordingly, plaintiff's Section 1983 claims against defendants Hastings, Peterson, and Spinner are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Retaliation Claims

Courts must approach claims of retaliation " 'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.' " *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (*quoting Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (*quoting Dawes*, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

**\*14** Here, the Court liberally construes the complaint to assert retaliation claims against the following officials: (1) defendant Osborn based on this official initiating or participating in the First Assault, Fourth Assault, Eighth Assault, and Ninth Assault, and failing to protect plaintiff with respect to the second inmate assault, third inmate assault and seventh inmate assault, in response to plaintiff filing grievances against him, Compl., ¶¶ 16, 31, 71-73, 76-84, 101-106, 120, 150-155 ("First Retaliation Claim"); (2) defendants Lamica, Locke, and Keating denying plaintiff access to legal mail between August ad October, 2021, in response to plaintiff filing grievances against them, Compl., ¶¶ 292-294 ("Second Retaliation Claim"); (3) defendant Sturgen forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021 based on his refusal to "take a COVID-19 test[,]" Compl., ¶ 271 ("Third Retaliation Claim"); (4) defendant Menard initiating the Fifth Assault in response to plaintiff filing a grievance against him, Compl., ¶ 37 ("Fourth Retaliation Claim"); (5) defendant Trombley participating in

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 43 of 79
2023 WL 4744735

the Sixth Assault in response to plaintiff filing a lawsuit against him, Compl., ¶ 43 ("Fifth Retaliation Claim"); (6) defendants Bailey and Trombley engaging in retaliatory acts of intimidation against plaintiff following the Sixth Assault in response to plaintiff filing grievances against them, Compl., ¶¶ 40-52 ("Sixth Retaliation Claim"); (7) defendant Austin Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021, in response to plaintiff filing a grievance against him, Compl., ¶¶ 190-193, 269 ("Seventh Retaliation Claim"); (8) defendant Marshall directing "retaliatory search[es]" of plaintiff's cell on January 6 and January 30, 2022, prior to the Seventh Assault, and participating in the Seventh Assault, in response to plaintiff filing grievances and a lawsuit against him, Compl., ¶¶ 27-29, 53-60, 222-224 ("Eighth Retaliation Claim"); (9) defendant Mitchell participating in the Seventh Assault in response to plaintiff filing a grievance against him for his role in a use-of-force incident on July 12, 2021, and/or for filing a grievance against him shortly before the Seventh Assault, Compl., ¶¶ 27-29, 222 ("Ninth Retaliation Claim"); (10) defendant Veneske directing defendants Welch and Chase to attack plaintiff on May 2, 2022, in response to plaintiff filing a grievance regarding sexual assaults committed against him earlier that day, Compl., ¶ 108 ("Tenth Retaliation Claim"); (11) defendant Keleher directing two searches of plaintiff's cell and recommending him for placement in a cell with Inmate Samuel on May 5, 2022, in response to plaintiff filing a grievance against this official days earlier, Compl., ¶¶ 113-114 ("Eleventh Retaliation Claim"); (12) defendant North "amend[ing] the Directive for double-cell housing assignments regarding victim prone inmates" on May 13, 2022, to "permit inmates with a pattern of being victimized by other inmates to be double-bunk[ed] at the Deputy of Security's discretion[,]" in response to plaintiff "reporting sexual and physical assaults by other prisoners," Compl., ¶ 124 ("Twelfth Retaliation Claim"); (13) defendants Rowe and Osborn recommending, and defendant Bishop approving, plaintiff to be celled with Inmate X, in response to plaintiff filing a grievance regarding "double-bunking[,]" Compl., ¶¶ 128 ("Thirteenth Retaliation Claim"); (14) defendants Fletcher, Gravlin, and Bishop assigning plaintiff to be celled with Inmate Y on August 5, 2022, in response to plaintiff filing a grievance a few days earlier regarding officials placing rival gang members in double-bunk cells together, Compl., ¶¶ 129-131 ("Fourteenth Retaliation Claim"); (15) defendants Uhler, Bishop, and Classification and Movement Officials John Doe #1 and John Doe #2 "conspir[ing] to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell" in late 2022, in response to grievances and lawsuits filed regarding his placement in a double-bunk cell, Compl., ¶¶ 145-184 ("Fifteenth Retaliation Claim"); (16) defendants Osborn, Plonka, Gettman, and Gravlin "mov[ing] plaintiff to a double cell" with Inmate Flenders on December 12, 2022, and then relocating him to a cell with Inmate Williams based on his complaints about being housed with Inmate Flenders and earlier grievances that he filed, Compl., ¶¶ 150-156 ("Sixteenth Retaliation Claim"); and (17) defendants Fletcher and Keleher directing searches of plaintiff's cell between April 25 and May 5, 2022, which defendants Uhler and Bishop failed to remedy, in response to earlier grievances and/or lawsuits that plaintiff filed against these officials, Compl., ¶¶ 319-326 ("Seventeenth Retaliation Claim").

With respect to the Second Retaliation Claim against defendant Locke, the complaint lacks allegations which plausibly suggest that the single alleged incident of mail tampering resulted in any sort of material injury to plaintiff, or otherwise deterred him from pursuing his legal action. Thus, plaintiff has failed to adequately allege that defendant Locke's conduct rises to the level of adverse action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. *Rasheen v. Adner*, 356 F. Supp. 3d 222, 243-44 (N.D.N.Y. 2019) (finding an isolated incident of mail tampering did not constitute an adverse action because plaintiff failed to allege facts plausibly suggesting that he suffered any injury as a result); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010) (collecting cases in which claims of mail tampering did not constitute an adverse action, noting in particular that the plaintiff had alleged only a single instance of mail interference); *Islam v. Goord*, No. 05-CV-7502, 2006 WL 2819651, at *7 (S.D.N.Y. Sept. 29, 2006) (finding that isolated incidents of tampering with plaintiff's family and legal mail was not an adverse action because it would not deter an ordinary individual from exercising his constitutional rights and plaintiff failed to allege he suffered any injury as a result of the tampering). Accordingly, plaintiff's Second Retaliation Claim against defendant Locke is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Third Retaliation Claim against defendant Sturgen, even assuming that plaintiff's election not to "take a COVID-19 test" satisfies the protected activity requirement, the complaint lacks allegations which plausibly suggest that placing plaintiff on quarantine status constitutes adverse action that was substantially motivated by a desire to punish plaintiff for engaging in protected activity, as opposed to a desire to impose facility-wide health precautions. Accordingly, plaintiff's Third

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 44 of 79
Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

Retaliation Claim against defendant Sturgen is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Seventh Retaliation Claim against defendant Austin Martin, although the complaint conclusorily alleges that this official removed plaintiff's mattress from his cell on December 6, 2021, "as a means of retaliation for filing a grievance against him[,]" the complaint does not identify any wrongdoing by this official prior to December 6, 2021, let alone indicate when plaintiff filed a grievance against this official. Thus, the Court has no basis to plausibly infer that the alleged wrongdoing on December 6, 2021, was substantially motivated by plaintiff's engagement in protected activity. Accordingly, plaintiff's Seventh Retaliation Claim against defendant Martin is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

 **\*15**  With respect to the Twelfth Retaliation Claim against defendant North, the complaint lacks allegations which plausibly suggest that (1) defendant North was employed at Upstate C.F.; or (2) the alleged Directive amendment impacted only inmates at this facility. In addition, the Court has no basis to plausibly infer from the allegations in the complaint that defendant North was aware of plaintiff's engagement in protected activity before allegedly amending the Directive regarding double-celling. Thus, the complaint fails to adequately allege that defendant North's conduct was substantially motivated by plaintiff's engagement in protected activity. *See, e.g.*, *Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2017 WL 384066, at \*7 (N.D.N.Y. Jan. 27, 2017) (dismissing retaliation claim against corrections officer where plaintiff failed to allege that corrections officer was aware of the protected activity that gave rise to the claim); *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 208 (N.D.N.Y. 2015) (same); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 368 (N.D.N.Y. 2010) ("Plaintiff has failed to demonstrate a causal connection between his conduct and the adverse action of leaving the lights on in the SHU twenty-four hours a day since this policy applied to all inmates in the SHU, not just Plaintiff .... Therefore, Plaintiff cannot sustain a claim a retaliation since the adverse action was not directed at him, but rather the entire SHU population."). Accordingly, plaintiff's Twelfth Retaliation Claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the Fifteenth Retaliation Claim against defendants Uhler, Bishop, and Classification and Movement Officials John Doe #1 and John Doe #2 based on these officials allegedly "conspir[ing] to transfer plaintiff back to Upstate [Correctional Facility] and ... confine [him] in [a] double-cell" in late 2022, in response to grievances and lawsuits filed by plaintiff regarding his placement in a double-bunk cell, the complaint is devoid of allegations explaining how defendants John Doe #1 and John Doe #2 – both of whom are allegedly employed at the DOCCS Central Office in Albany, New York – may have known about lawsuits or grievances plaintiff filed related to double-celling. Furthermore, the complaint does not include any allegations explaining the basis for plaintiff's knowledge that these officials "conspired" with defendants Uhler and Bishop to return plaintiff back to Upstate C.F. Indeed, beyond plaintiff's speculation, the Court has no basis to plausibly infer that, but for plaintiff filing grievances and commencing litigation regarding double-celling, he would not have been transferred back to Upstate C.F. in or around November, 2022. Accordingly, plaintiff's Fifteenth Retaliation Claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to the remaining retaliation claims identified above, the Court finds that the complaint alleges enough to warrant a response. Accordingly, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that all retaliation claims other than the Second Retaliation Claim against defendant Locke, the Third Retaliation Claim, the Seventh Retaliation claim, the Twelfth Retaliation Claim, and the Fifteenth Retaliation Claim survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 3. Mail Tampering Claims

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351. A prisoner's mail may only be restricted to further " 'one or more of the substantial governmental interests of security,

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

order, and rehabilitation ... [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.' " *Id.* (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)). "The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims." *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011) (dismissing access-to-the-courts claim for failure to allege injury, but holding that plaintiff adequately alleged a violation of his right to send and receive mail). "It is thus not necessary to allege actual injury when asserting a violation of one's right to the free flow of mail." *Antrobus v. City of New York*, No. 11-CV-2524, 2014 WL 1285648, at *4 (S.D.N.Y. Mar. 27, 2014) (citations omitted).

 **\*16** As courts have attempted to balance the competing interests implicated when facilities place restrictions on prison mail, the courts have "consistently afforded greater protection to legal mail than to non-legal mail[.]" *Davis*, 320 F.3d at 351. "While a prisoner has a right to be present when his legal mail is opened, ... an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citations omitted). However, in *Washington v. James*, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 1139); *see also Turner v. Safley*, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

In this case, the complaint alleges that plaintiff was denied access to legal mail on the following dates by the following officials: (1) on August 6, 2021, by defendant John Doe #5; (2) on September 15, 16, 17 and October 6, 7, 8, 9, 15, 16, 17, 18, and 19, 2021, by defendant Lamica; (3) on September 22, 2021, by defendant Lord; (4) on October 7, 2021, by defendant Locke; (5) on October 8, 2021, by defendant John Doe #6; (6) on October 22 and 23, 2021, by defendant Keating; and (7) on November 5 and December 1, 2021, by defendant Ayer. Compl., ¶¶ 291-295.

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's mail tampering claims against defendants Lamica, Lord, Locke, John Doe #6, Keating, and Ayer survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's mail tampering claim against defendant John Doe #5 because (1) this official's alleged refusal to provide plaintiff with access to legal mail was the first time plaintiff experienced this type of deprivation, and (2) a single incident of mail tampering – the first of its kind – does not plausibly suggest an ongoing practice of censorship unjustified by a substantial government interest.

Accordingly, plaintiff's mail tampering claim against defendant John Doe #5 is dismissed pursuant to 28 U.S.C. § 1915(e)(2) (B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Free Exercise Claims

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. *See* U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause") (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

To state a claim under the Free Exercise Clause of the First Amendment, an inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin*, 467 F.3d at 274-75 (articulating test that inmates

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 46 of 79

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

"must show at the threshold that the disputed conduct ... burdens his sincerely held religious beliefs," prior to advancing to the *Turner* test and "legitimate penological interests that justify the impinging conduct"). "For a burden to be substantial, a plaintiff must demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith." *Booker v. Maly*, No. 9:12-CV-246 (NAM/ATB), 2014 WL 1289579, at *22 (N.D.N.Y. Mar. 31, 2014), *aff'd*, 590 Fed. App'x 82 (2d Cir. 2015) (summary order).

**\*17** At this stage of the proceeding, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, *see e.g. Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's Free Exercise claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 5. Excessive Force and Failure-to-Intervene Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). [6]

[6]    In this regard, while "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance "contemporary standards of decency are always violated." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9). The key inquiry into a claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986)); *see also Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

"To determine whether a defendant acted maliciously, several factors should be examined including, 'the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.' " *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano*, 998 F.2d at 105).

When a citizen is subjected to excessive force, "an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer." *Portillo v. Webb*, No. 16-CV-4731, 2017 WL 4570374, at *4 (S.D.N.Y. Oct. 11, 2017) (collecting cases), *report and recommendation adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018); *see also Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (internal quotation marks and citation omitted)).

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that each of plaintiff's Eighth Amendment excessive force and failure-to-intervene claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

Case 1:25-cv-01435-AJB-TWD   Document 4   Filed 12/01/25   Page 47 of 79
Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

### 6. Failure-to-Protect Claims

**\*18** "The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials may be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm. *See Farmer*, 511 U.S. at 836. In order to establish a "failure to protect," the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety. *Id.* Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"One way to make out such a claim is to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.' " *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at \*4 (S.D.N.Y. Sept. 25, 2000) (quoting *Farmer*, 511 U.S. at 842-43); *see also Hayes*, 84 F.3d at 620-21 (prisoner's repeated expressions of fear following an inmate attack and requests for transfer as a safety measure raised a question of fact). "Courts have [also] found that a prisoner validly states an Eighth Amendment claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted." *Davis v. Torres*, No. 10-CV-2236, 2012 WL 3070092, at \*5 (S.D.N.Y. May 2, 2012), *report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. July 27, 2012); *see also Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at \*17 (S.D.N.Y. Mar. 26, 2008) (denying summary judgment where plaintiff presented evidence that he informed sergeant of correction officers' threatening behavior and was later assaulted by those officers).

"On the other hand, an inmate's communications about 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals' are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." *Stephens v. Venettozzi*, No. 13-CV-5779, 2016 WL 929268, at \*19 (S.D.N.Y. Feb. 24, 2016) (quoting *Ross v. City of New York*, No. 12-CV-8545, 2014 WL 3844783, at \*8 (S.D.N.Y. 2014), *rev'd on other grounds*, No. 14-3327 (2d Cir. July 20, 2015) (summary order)), *report and recommendation adopted sub nom. Stephens v. Venetozzi*, 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016). "Neither mere negligence nor a prison guard's mere failure to act reasonably is enough to state an Eighth Amendment deliberate indifference claim." *Sawyer v. New York State Depat. of Corr. Servs.*, No. 11-CV-0152, 2015 WL 6644112, at \*7 (W.D.N.Y. June 30, 2015) (citing *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 361 (W.D.N.Y. 2013)), *report and recommendation adopted in pertinent part by* 2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015); *Shell v. Brun*, 585 F. Supp. 2d 465, 469-70 (W.D.N.Y. 2008) ("In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. Mere negligence (for example if a prison guard should know of a risk but does not) is not enough ....").

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that each of plaintiff's Eighth Amendment failure-to-protect claims survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 7. Conditions-of-Confinement Claims

**\*19** The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." *Wolfish v. Levi*, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520 (1979); *Lareau v. Manson*, 651 F.2d 96, 106 (2d Cir. 1981). To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 48 of 79

Amendment, a plaintiff must satisfy both an objective and subjective element. *See Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). A plaintiff must demonstrate that (1) the conditions of confinement resulted in "unquestioned and serious deprivations of basic human needs," *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985); *see also Jolly*, 76 F.3d at 480, and (2) the defendants acted with "deliberate indifference." *Wilson*, 501 U.S. at 303-04.

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds the following conditions-of-confinement claims survive sua sponte review and require a response: (1) plaintiff's conditions-of-confinement claims against defendants Gravlin, Uhler, Bishop, Sergeant Jane Doe, Martin, Marshall, Sturgen, and Veneske based on unhygienic conditions, inadequate heating and clothing, and inadequate sleeping accommodations; (2) plaintiff's conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; and (3) plaintiff's conditions-of-confinement claims against defendants Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

The Court, however, reaches a different conclusion with respect to plaintiff's conditions-of-confinement claims against (1) defendant Sturgen based on this official allegedly forcing plaintiff to quarantine in his cell for fourteen days in July, 2021 and October, 2021, and (2) defendant Annucci based on this official allegedly providing plaintiff with an inadequate diet between 2019 and 2023.

With respect to defendant Sturgen, the Court has no basis to plausibly infer that forcing plaintiff to quarantine in his cell on two separate occasions for fourteen days deprived him of a basic human need. Furthermore, even assuming the quarantine hold subjected plaintiff to an objectively serious condition, the complaint is devoid of allegations which plausibly suggest that defendant Sturgen's decision was made out of deliberate indifference to plaintiff's health and safety (as opposed to out of a desire to reduce the potential spread of COVID-19). Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim against defendant Sturgen is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

With respect to plaintiff's claim against defendant Annucci based on the meal plan offered to plaintiff since 2019, the complaint generically alleges that plaintiff is on a "meatless" meal plan, which "lacks the necessary daily protien [sic], vitamins and minerals[,]" and "uses soy more than the daily 25 grams recommended by the Food and Drug Administration[.]" Compl., ¶¶ 344-345. The complaint further alleges that as a result of the meal plan, plaintiff "has suffered from low good cholesterol and vitamin D deficiency[.]" *Id.*, ¶ 346.

 **\*20**  As an initial matter, the complaint fails to explain how plaintiff knows that he suffers from "low good cholesterol and [a] vitamin D deficiency[,]" the severity of these alleged deficiencies, or when in relation to plaintiff's current diet he began suffering these deficiencies. Moreover, the complaint fails to allege facts which plausibly suggest that these deficiencies have impaired plaintiff's daily functioning, or present any long-term health problems, and the Court has no basis to plausibly infer from the allegations in the complaint that the food items offered to plaintiff are not available to the general public for consumption based on health and safety concerns. Thus, plaintiff has failed to adequately allege that his meal plan – which is presumably offered to other inmates as well – presents a known risk to his health. *See, e.g., Mejia v. Goord*, No. 9:03-CV-124 (LEK/DEP), 2005 WL 2179422, at *6 (N.D.N.Y. Aug. 156, 2005) (noting that "the Eighth Amendment does not elevate to constitutional significance an inmate's dislike for the food served or the portions received"); *Collado v. Sposato*, No. 12-CV-2151, 2012 WL 3113837, at *4 (E.D.N.Y. July 25, 2012) ("Preference for certain foods and dislike of others cannot be equated with a constitutional guarantee to a custom-tailored menu."); *Mitchell v. New York State Dep't of Corr. Servs.*, No. 6:06-CV-6278, 2012 WL 6204205, at *12 (W.D.N.Y. Dec. 12, 2012) (dismissing as frivolous prisoner's claim that a soy-based diet causes cancer).

Furthermore, the complaint does not allege that any medical professionals have expressed concerns for plaintiff's health based on his diet, or that plaintiff has sought treatment to address any health-related concerns stemming from his diet. In addition,

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

the complaint fails to explain why plaintiff has only been offered a "meatless" meal plan since 2019 if he wishes to consume meat, or how the diet offered to plaintiff is a "cost saving measure[.]" Thus, the Court also has no basis to plausibly infer from the allegations in the complaint that defendant Annucci knew that plaintiff was (or has been) suffering from a nutritionally inadequate diet, yet has continued to deprive plaintiff of alternative meal options, i.e., has acted with deliberate indifference to plaintiff's dietary needs.

Accordingly, plaintiff's Eighth Amendment conditions-of-confinement claim against defendant Annucci based on the meal plan offered to plaintiff since 2019 is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 8. Medical Indifference Claims

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle*, 429 U.S. at 102, 104. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "The standard of deliberate indifference includes both subjective and objective components." *Id.*

"First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). "Determining whether a deprivation is an objectively serious deprivation entails two inquiries[:] [1] ... whether the prisoner was actually deprived of adequate medical care[; and 2] ... whether the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (citations omitted).

The first inquiry under the objective component requires examining "whether the prisoner was actually deprived of adequate medical care." *Salahuddin*, 467 F.3d at 279. Prison officials who act "reasonably" in response to an inmate's health risk will not be found liable because the official's duty is only to provide "reasonable care." *Id.* at 279-80 (citing *Farmer*, 511 U.S. at 844-47).

The second inquiry under the objective component requires examining whether the purported inadequacy in the medical care is "sufficiently serious." *Salahuddin*, 467 F.3d at 280. If the "unreasonable care" consists of a failure to provide any treatment, then the court must examine whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)). A condition is "sufficiently serious" in objective terms if it presents "a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

**\*21** With respect to the subjective component of a medical indifference claim, a plaintiff must show that the defendant "act[ed] with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.' ").

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's medical indifference claims against defendants Dumas, Gravell, Jane Doe #1 and Jane Doe #2 survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 9. Disciplinary Due Process Claims

To successfully state a claim under Section 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. *Shakur v. Selsky*, 391 F.3d 106, 118 (2d Cir. 2004) (citing *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989)). Due process generally requires that the state afford individuals "some kind of hearing" prior to depriving them of a liberty or property interest. *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The duration of the challenged confinement, while not determinative, is a significant factor under *Sandin*. The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999)).

The "atypicality" inquiry under *Sandin* is normally a question of law. *Colon*, 215 F.3d at 230-31; *Sealey*, 197 F.3d at 585. In making that determination the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof. *Id.*

Although the Second Circuit has declined to provide a bright-line rule as to what duration of punitive confinement implicates a prisoner's constitutional rights, general guidelines have been defined. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). The Second Circuit generally takes the position that normal confinement in a segregated housing unit of 101 days or less does not constitute an "atypical and significant hardship" under *Sandin*. *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citing *Sealey*, 197 F.3d at 589-90).[7] As a general matter, "[a] period of confinement between 101 and 305 days is considered to be an 'intermediate duration' and could implicate a liberty interest should a detailed record of the conditions of confinement indicate that it was an atypical and significant hardship." *Bunting v. Nagy*, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (citing *Sealey*, 197 F.3d at 589; *see also Palmer*, 364 F.3d at 64-65 ("Where the plaintiff was confined for an intermediate duration -- between 101 and 305 days -- 'development of a detailed record' of the conditions of confinement relative to ordinary prison conditions is required.") (citing *Colon*, 215 F.3d at 232).

7    A New York state inmate confined in SHU is placed in a solitary confinement cell for 23 hours a day. The inmate may exercise in the yard for one hour each day; is limited to two showers a week; and may not work or attend programming. *See Colon*, 215 F.3d at 230; N.Y. Comp. Codes R. & Regs., tit. 7, §§ 304.1-.14 (2008).

**\*22** Under some circumstances, separate restrictive confinement sentences can be aggregated for purposes of determining whether there is a protected liberty interest. *See Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001). To determine whether such sentences should be aggregated for this purpose, "the precise issue ... is whether the disciplinary confinements in question constitute a 'sustained' period of confinement[.]" *Taylor v. Artus*, No. 05-CV-271, 2007 WL 4555932, at \*8 (N.D.N.Y. Dec. 19, 2007). Generally, "it appears from Second Circuit decisions that separate SHU sentences constitute a 'sustained' period of confinement when (1) they are contiguous and (2) they either (a) were imposed by the same disciplinary hearing officer or (b) were based on the same administrative rationale and are executed under the same conditions." *Id.* (collecting cases).

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, *inter alia, Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974)). The hearing officer's findings must be supported by "some" "reliable evidence." *Id.* (citing, *inter alia, Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

2023 WL 4744735

In this case, the complaint asserts due process claims based on the First Disciplinary Hearing, the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing. *See generally*, Compl.

### a. The First Disciplinary Hearing

According to the complaint, on or about November 1, 2021, plaintiff was issued two misbehavior reports charging him with, among other things, two sex offenses based on allegations that he made sexually charged statements to two corrections officials in response to their orders. Compl., ¶¶ 187-189. On November 9, 2021, defendant S. Martin presided over the First Disciplinary Hearing, found plaintiff guilty of all charges except interference in the first report and violent conduct in the second report, and sentenced plaintiff to 90 days confinement in the SHU. *Id.*, ¶¶ 190-194.

The complaint alleges that the charged misconduct, which included making sexually explicit statements to a corrections officer, did not constitute a sex offense, and defendant Martin's guilty determination was "not supported by 'some reliable evidence.' " Compl., ¶¶ 190-191. However, the complaint fails to include any details from which this Court might plausibly infer that the guilty determination was not supported by some reliable evidence. Indeed, the complaint is devoid of any allegations regarding the documentary evidence considered, and the witnesses who testified, during plaintiff's disciplinary hearing. Furthermore, plaintiff does not deny that he refused direct orders issued by a sergeant and made sexually explicit statements to the official as charged.

Simply put, even assuming that the disciplinary sanction triggered a liberty interest, the Court has no basis to plausibly infer that plaintiff was denied the process to which he was entitled during the First Disciplinary Hearing. Accordingly, plaintiff disciplinary due process claims related to the First Disciplinary Hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Remaining Disciplinary Hearings

With respect to the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing, the complaint does not include any allegations regarding these hearings, let alone allegations which plausibly suggest that plaintiff was denied the process to which he was entitled during any of them. Thus, plaintiff has failed to adequately allege that he suffered a violation of his due process rights in connection with any of the other disciplinary hearings referenced in the complaint.

**\*23** Accordingly, plaintiff's disciplinary due process claims related to the Second Disciplinary Hearing, the Third Disciplinary Hearing, the Fourth Disciplinary Hearing, the Fifth Disciplinary Hearing, and the Sixth Disciplinary Hearing are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. [8]

[8]    Insofar as the complaint alleges that the disciplinary sentences imposed with respect to each of the six disciplinary hearings was grossly disproportionate to the charged offenses, these allegations form the basis of plaintiff's Eighth Amendment claims for excessive restrictive confinement in the RRU.

### 10. Due Process Claims Based on Denial of Telephone Privileges

The complaint alleges that defendants Veneske and Gravlin denied plaintiff weekly phone calls on four separate occasions between July and December, 2021. *See* Compl., ¶ 297. At the time, plaintiff was confined in the SHU, and New York Correction

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 52 of 79

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

Law § 137 was not in effect.[9]  Furthermore, the law is well-settled that "[a] prisoner's access to family and friends via telephone may be restricted so long as the prisoner has some other avenue to communicate, even if less than ideal." *See Fox v. Lee*, No. 9:15-CV-0390 (TJM/CFH), 2016 WL 11807252, at *5 (N.D.N.Y. Dec. 19, 2016) (collecting cases).

[9]    This statute, which became effective on March 31, 2022, states, among other things, that "[w]ithin twenty-four hours of disciplinary confinement ... and at weekly intervals thereafter for the duration of such confinement, an incarcerated individual shall be permitted to make at least one personal phone call, except when to do so would create an unacceptable risk to the safety and security of incarcerated individuals or staff." *See* N.Y Corr. Law § 137(6)(g).

Here, plaintiff does not allege that he was altogether denied all forms of communication with the outside world at any point during his confinement in the SHU, let alone during the four weeks that he was allegedly denied his weekly phone calls. Thus, the Court does not construe the complaint to assert a cognizable Section 1983 claim based on the alleged phone deprivations. *See Fox*, 2016 WL 11807252, at *5; *see also Martinez v. Healey*, No. 14-CV-302, 2014 WL 5090056, at *3 (S.D.N.Y. Oct. 10, 2014) (noting that "inmates have no right to unlimited telephone calls" and that "phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel" (alteration and internal quotation marks omitted)); *Edwards v. Horn*, No. 10-CV-6194, 2012 WL 760172, at *5 (S.D.N.Y. Mar. 8, 2012) ("Because inmates have no right to unlimited telephone calls, [the plaintiff] must, but fails to, allege that he was stripped of alternate methods of communication to state a violation of his constitutional rights" (alterations, citation, and internal quotation marks omitted)); *Henry v. Davis*, No. 10-CV-7575, 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) ("Phone restrictions do not impinge on a prisoner's constitutional rights where an inmate has alternate means of communicating with the outside world, and particularly with counsel."), *report and recommendation adopted by* 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011).

Accordingly, plaintiff's due process claims against defendants Gravlin and Veneske based on denying him access to phone calls are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 11. Due Process Claims Based on Conditions of RRU Confinement

**\*24** Aside from challenging the disciplinary determinations that resulted in his placement in the RRU, plaintiff challenges both the restrictive nature of his confinement in the RRU, and the extended duration of this confinement. More specifically, the complaint alleges that plaintiff (1) was limited to two hours of out-of-cell programming and subjected to other restrictions throughout his confinement in the RRU, which began on April 12, 2022, (2) was deprived of a rehabilitation plan throughout his confinement in the RRU, which prevented him from obtaining early release, and (3) is scheduled to remain in the RRU for more than one year, despite New York law prohibiting such a restrictive confinement period. Compl., ¶¶ 303-373. According to plaintiff, pursuant to New York Correction Law § 137, he has a liberty interest in accessing the programs, services, privileges, and rehabilitation plan that he was denied, among other things. *Id.*

"A liberty interest under the Fourteenth Amendment arises either directly from the Due Process Clause itself or from a state's laws." *Galloway v. Suffolk Cnty. Corr. Facility*, 232 F. Supp. 2d 4, 8 (E.D.N.Y. 2002) (citing *Klos v. Haskell*, 48 F.3d 81, 86 (2d Cir. 1995)). "For a liberty interest to be conferred by the state, two requirements must be met: (1) the state must have articulated specified substantive predicates which limit the discretion of state officials; and (2) it must have employed explicitly mandatory language, requiring state officials to follow those substantive predicates." *Klos*, 48 F.3d at 87 (internal quotation marks and citations omitted).

Section 6 of New York Correction Law § 137, which became effective on March 31, 2022, provides, in pertinent part, as follows:

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 53 of 79

**Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)**

2023 WL 4744735

6. Except as provided in paragraphs (d) and (e) of this subdivision, the superintendent of a correctional facility may keep any incarcerated individual confined in a cell or room, apart from the accommodations provided for incarcerated individuals who are participating in programs of the facility, for such period as may be necessary for maintenance of order or discipline, but in any such case the following conditions shall be observed:

...

(j) (i) All segregated confinement and residential rehabilitation units shall create the least restrictive environment necessary for the safety of incarcerated persons, staff, and the security of the facility.

(ii) Persons in segregated confinement shall be offered out-of-cell programming at least four hours per day, including at least one hour for recreation. Persons admitted to residential rehabilitation units shall be offered at least six hours of daily out-of-cell congregate programming, services, treatment, recreation, activities and/or meals, with an additional minimum of one hour for recreation. Recreation in all residential rehabilitation units shall take place in a congregate setting, unless exceptional circumstances mean doing so would create a significant and unreasonable risk to the safety and security of other incarcerated persons, staff, or the facility. Persons in segregated confinement and residential rehabilitation units shall be offered programming led by program or therapeutic staff five days per week, except on recognized state legal holidays. All other out-of-cell time may include peerled programs, time in a day room or out-of-cell recreation area with other people, congregate meals, volunteer programs, or other congregate activities.

(iii) No limitation on services, treatment, or basic needs such as clothing, food and bedding shall be imposed as a form of punishment. If provision of any such services, treatment or basic needs to an individual would create a significant and unreasonable risk to the safety and security of incarcerated persons, staff, or the facility, such services, treatment or basic needs may be withheld until it reasonably appears that the risk has ended....

(iv) Upon admission to a residential rehabilitation unit, program and mental health staff shall administer assessments and develop an individual rehabilitation plan in consultation with the resident, based upon his or her medical, mental health, and programming needs. Such plan shall identify specific goals and programs, treatment, and services to be offered, with projected time frames for completion and discharge from the residential rehabilitation unit.

 **\*25**  (v) An incarcerated person in a residential rehabilitation unit shall have access to programs and work assignments comparable to core programs and types of work assignments in general population. Such incarcerated persons shall also have access to additional out-of-cell, trauma-informed therapeutic programming aimed at promoting personal development, addressing underlying causes of problematic behavior resulting in placement in a residential rehabilitation unit, and helping prepare for discharge from the unit and to the community.

(vi) If the department establishes that a person committed an act defined in subparagraph (ii) of paragraph (k) of this subdivision while in segregated confinement or a residential rehabilitation unit and poses a significant and unreasonable risk to the safety and security of other incarcerated persons or staff, the department may restrict such person's participation in programming and out-of-cell activities as necessary for the safety of other incarcerated persons and staff. If such restrictions are imposed, the department must provide at least four hours out-of-cell time daily, including at least two hours of therapeutic programming and two hours of recreation, and must make reasonable efforts to reinstate access to programming as soon as possible. In no case may such restrictions extend beyond fifteen days unless the person commits a new act defined herein justifying restrictions on program access, or if the commissioner and, when appropriate, the commissioner of mental health personally reasonably determine that the person poses an extraordinary and unacceptable risk of imminent harm to the safety or security of incarcerated persons or staff. Any extension of program restrictions beyond fifteen days must be meaningfully reviewed and approved at least every fifteen days by the commissioner and, when appropriate, by the commissioner of mental health. Each review must consider the impact of therapeutic programming provided during the fifteen-day period on the person's risk of imminent harm and the commissioner must articulate in writing, with a copy provided to the incarcerated person, the specific reason why the person currently poses an extraordinary and unacceptable risk of imminent harm to the

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 54 of 79

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

safety or security of incarcerated persons or staff. In no case may restrictions imposed by the commissioner extend beyond ninety days unless the person commits a new act defined herein justifying restrictions on program access.

(m) (i) Any sanction imposed on an incarcerated person requiring segregated confinement shall run while the person is in a residential rehabilitation unit and the person shall be discharged from the unit before or at the time such sanction expires. If a person successfully completes his or her rehabilitation plan before the sanction expires, the person shall have a right to be discharged from the unit upon such completion.

(ii) If an incarcerated person has not been discharged from a residential rehabilitation unit within one year of initial admission to such a unit or is within sixty days of a fixed or tentatively approved date for release from a correctional facility, he or she shall have a right to be discharged from the unit unless he or she committed an act listed in subparagraph (ii) of paragraph (k) of this subdivision within the prior one hundred eighty days and he or she poses a significant and unreasonable risk to the safety or security of incarcerated persons or staff. In any such case the decision not to discharge such person shall be immediately and automatically subjected to an independent review by the commissioner and the commissioner of mental health or their designees. A person may remain in a residential rehabilitation unit beyond the time limits provided in this section if both commissioners or both of their designees approve this decision. In extraordinary circumstances, a person who has not committed an act listed in subparagraph (ii) of paragraph (k) of this subdivision within the prior one hundred eighty days, may remain in a residential rehabilitation unit beyond the time limits provided in this section if both the commissioner and the commissioner of mental health personally determine that such individual poses an extraordinary and unacceptable risk of imminent harm to the safety or security of incarcerated persons or staff.

**\*26** (iii) There shall be a meaningful periodic review of the status of each incarcerated person in a residential rehabilitation unit at least every sixty days to assess the person's progress and determine if the person should be discharged from the unit. Following such periodic review, if the person is not discharged from the unit, program and mental health staff shall specify in writing the reasons for the determination and the program, treatment, service, and/or corrective action required before discharge. The incarcerated person shall be given access to the programs, treatment and services specified, and shall have a right to be discharged from the residential rehabilitation unit upon the successful fulfillment of such requirements.

(iv) When an incarcerated person is discharged from a residential rehabilitation unit, any remaining time to serve on any underlying disciplinary sanction shall be dismissed. If an incarcerated person substantially completes his or her rehabilitation plan, he or she shall have any associated loss of good time restored upon discharge from the unit

In light of the foregoing statutory language, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that plaintiff's due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci related to restrictions imposed with respect to his RRU confinement survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.


### 12. Conspiracy Claims

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors ...; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). A plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy ... [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 55 of 79

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)

2023 WL 4744735

The complaint asserts conspiracy claims against defendants Tyler, Phillips, Osborn, Robare, Keleher, Harmer, Gravlin, Hooper, and McGee. Compl. at 44-45.

As an initial matter, the complaint is devoid of any details regarding an agreement entered into between two or more of the named defendants to violate plaintiff's constitutional rights. For example, the complaint lacks any allegations which plausibly suggest that any of the named defendants involved in the alleged use-of-force incidents or housing plaintiff with an inmate who assaulted him, agreed, in advance, to subject plaintiff to physical harm. In any event, plaintiff's excessive force and failure-to-intervene claims against defendants Tyler, Phillips, Osborn, Robare, Keleher, Harmer, and Gravlin have survived sua sponte review, and plaintiff need not establish that these officials agreed in advance to violate his constitutional rights in order to succeed on these claims. *See Clark v. City of Oswego*, No. 5:03-CV-202 (NAM/DEP), 2007 WL 925724, at *7 (N.D.N.Y. Mar. 26, 2007) ("A plaintiff asserting a Section 1983 conspiracy claim must first prove a violation of the underlying constitutional right, ..., or in other words, a civil conspiracy claim do[es] not set forth an independent cause of action but rather is sustainable only after an underlying tort claim has been established[.]" (internal quotation marks and citations omitted)); *see also Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009), as amended (Oct. 7, 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails."); *DeStefano v. Duncanson*, No. 08-CV-3419, 2011 WL 651452, at *4 (S.D.N.Y. Feb. 10, 2011) ("A Section 1983 conspiracy claim against private individuals will stand 'only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right.' ") (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)). Furthermore, insofar as plaintiff asserts conspiracy claims against defendants Hooper and McGee based on allegations that these officials prepared false reports regarding the Third Assault in an effort to "conceal" the wrongdoing, Compl., ¶¶ 23, the alleged creation of false reports by officials who were not present during the alleged use-of-force incident is not enough to plausibly suggest participation in an agreement to violate plaintiff's constitutional rights. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissing the plaintiff's conspiracy claim arising from allegations that the defendants conspired to retaliate against him by filing a false misbehavior report); *Lewis v. Havernack*, No. 9:12-CV-0031 (GLS/DEP), 2013 WL 1294606, at *11 (N.D.N.Y. Mar. 28, 2013) ("Here, the allegation that defendants Chapman and Imfeld conspired to file a false misbehavior report against plaintiff is not cognizable under section 1983 because plaintiff has no general constitutional right to be free from being falsely accused in a misbehavior report."), *report and recommendation adopted by* 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013).

**\*27**  Accordingly, plaintiff's conspiracy claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## IV. PRELIMINARY INJUNCTION MOTION

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.' " *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (citing *Citigroup Global Mkts.*, 598 F.3d at 35 n.4) (internal quotation marks omitted); *see also Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (a plaintiff seeking a mandatory injunction must make a "clear" or "substantial" showing of a likelihood of success on the merits of his claim). The same standards used to review a request for a preliminary injunction govern consideration of an application for a temporary restraining order. *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992); *Perri v. Bloomberg*, No. 06-CV-0403, 2008 WL 2944642, at * 2 (E.D.N.Y. Jul. 31,

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 56 of 79
Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

2008). The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

Plaintiff's request for injunctive relief seeks an order enjoining defendants Annucci, Uhler, Bishop, and Dumas from (1) assigning officials "involved in assaulting plaintiff from assuming a post or supervising an area where plaintiff is located," (2) "assigning plaintiff to double-bunk cells or having [him] remain in a double-cell [for] more than 60 days unless he volunteer[s]," (3) "continuing plaintiff's confinement in the RRU[,]" and (4) "denying [him] medical care[.]" *See* Preliminary Injunction Motion at 1.

After plaintiff filed his motion, he notified the Court in another one of his pending actions that he has been transferred to Great Meadow Correctional Facility. *See Bradshaw v. Annucci*, Dkt. No. 150.

In light of plaintiff's transfer, and the absence of any credible evidence that he is likely to continue suffering, at his new facility, the same alleged harm that forms the basis of his Preliminary Injunction motion, his request for injunctive relief is denied as moot. *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

## V. CONCLUSION

**\*28  WHEREFORE**, it is hereby

**ORDERED** that plaintiff's application for leave to proceed IFP (Dkt. No. 2) is **GRANTED** in accordance with 28 U.S.C. § 1915(g) because plaintiff has made a preliminary showing that he is entitled to the "imminent danger" exception; and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility designated by plaintiff as his current location with a copy of plaintiff's inmate authorization form (Dkt. No. 3), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk is directed to update the docket to add any officials identified herein as defendants who are not currently recognized as such; and it is further

**ORDERED** that the following claims **SURVIVE** sua sponte review: (1) plaintiff's retaliation claims against defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, and Keating (i.e., each of plaintiff's retaliation claims other than the Second Retaliation Claim against defendant Locke, the Third Retaliation Claim, the Seventh Retaliation Claim, the Twelfth Retaliation Claim, and the Fifteenth Retaliation Claim); (2) plaintiff's mail tampering claims against defendants Lamica, Locke, Keating, Lord, John Doe #6, and Ayer; (3) plaintiff's free exercise claims against defendants Bishop, Stickney, Uhler, and Annucci based on the denial of congregate services and religious meals; (4) plaintiff's excessive force and failure-to-intervene claims against defendants Osborn, Corrections Sergeant John Doe #1, Phillips, Tyler, Menard, Bailey, Trombley, Cymbrak, Mitchell, Chase, Marshall, Gettman, Morrison, Corrections Sergeant John Doe #2, Corrections Officer John Doe #3, Gravlin, Robare, Carter, Corrections Officer John Doe #4, Plonka, Keleher, and Harmer (i.e., the excessive force and failure-to-intervene claims related to each of the ten assaults identified in the recitation of facts); (5) plaintiff's failure-to-protect claims against defendants McQuinn, Waite, Bishop, Uhler, Fletcher, Osborn, Rowe, Veneske, Nichols, Holmes, Annucci, Keleher, Debyah, Gravlin, North, Harrigan, Classification and Movement Corrections Officers John Doe #1 and John Doe #2, Orbegozo, Corrections Sergeant John Doe #1, Plonka, Gettman, Carter, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, and Jubert (i.e., the failure-to-protect claims related to each of the nine inmate assaults identified in the recitation of facts); (6) plaintiff's conditions-of-confinement claim against defendant Gravlin based on inadequate heating in plaintiff's housing unit between September 25 and October 2, 2021; (7) plaintiff's conditions-of-

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 57 of 79

Bradshaw v. Annucci, Not Reported in Fed. Supp. (2023)
2023 WL 4744735

confinement claim against defendants Austin Martin and Marshall based on defendant Martin removing plaintiff's mattress from his cell, with approval from defendant Marshall, from December 6 to December 11, 2021; (8) plaintiff's conditions-of-confinement claim against defendant Corrections Sergeant Jane Doe based on this official "compell[ing] plaintiff to remain outside to stand in the freezing cold weather for about five or six hours while the officers and defendant Jane Doe remained inside the facility or on the bus with other prisoners[,]"; (9) plaintiff's conditions-of-confinement claim against defendants Gravlin, Veneske, Uhler, and Bishop based on these officials denying plaintiff in-cell cleaning supplies between April and September, 2022, and December, 2022 and January, 2023; (10) plaintiff's conditions-of-confinement claims against defendants Uhler, Bishop, and Annucci based on excessive restrictive confinement in the SHU from August 1, 2021 to April 12, 2022; (11) plaintiff's conditions-of-confinement claims against defendants S. Martin, Uhler, Rodriguez, Terriah, Bishop, LaPlant, Stickney, and Annucci based on excessive restrictive confinement in the RRU; (12) plaintiff's medical indifference claims against defendants Dumas, Gravell, Jane Doe #1, and Jane Doe #2; and (13) plaintiff's due process claims against defendants Stickney, Bishop, Uhler, Gravlin, Veneske, and Annucci based on the nature of his confinement in the RRU; and it is further

 **\*29** **ORDERED** that all remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted;[10] and it is further

[10]   Should plaintiff seek to pursue any of the claims dismissed without prejudice, including any claim dismissed against a terminated defendant, he must file an amended complaint. Any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant which plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's deadline to amend his pleading as a matter of course is set forth in Rule 15(a) of the Federal Rules of Civil Procedure.

**ORDERED** that the Preliminary Injunction Motion (Dkt. No. 4) is **DENIED without prejudice** as set forth above; and it is further

**ORDERED** that the Clerk shall **TERMINATE** the following individuals as defendants in this action: Hastings, Peterson, Spinner, Hooper, McGee, and John Doe #5; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service, the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, Keating Locke, Lord, Ayer, Stickney, Uhler, Annucci, Phillips, Tyler, Cymbrak, Chase, Morrison, Robare, Carter, Harmer, McQuinn, Waite, Nichols, Holmes, Debyah, North, Harrigan, Orbegozo, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, Jubert, Austin Martin, S. Martin, Rodriguez, Terriah, LaPlant, Dumas, and Gravell.[11]  The Clerk shall forward a copy of the summons and complaint by electronic mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

[11]   Summonses will not issue for the "Doe" defendants because the U.S. Marshal cannot effect service on an individual who has not been identified by name.

**ORDERED** that a response to the complaint be filed by defendants Osborn, Bailey, Menard, Trombley, Marshall, Keleher, Plonka, Gettman, Gravlin, Bishop, Mitchell, Fletcher, Veneske, Rowe, Lamica, Keating Locke, Lord, Ayer, Stickney, Uhler, Annucci, Phillips, Tyler, Cymbrak, Chase, Morrison, Robare, Carter, Harmer, McQuinn, Waite, Nichols, Holmes, Debyah, North, Harrigan, Orbegozo, Sturgen, Lewis, Sharpe, Dumas, Hollenbeck, DeCosse, Gordon, Jubert, Austin Martin, S. Martin, Rodriguez, Terriah, LaPlant, Dumas, and Gravell, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that plaintiff must take reasonable steps to ascertain the identity of the remaining "Doe" defendants and, when identified, seek to amend the complaint to add these individuals as defendants in this action pursuant to Federal Rule of Civil Procedure 15(a); and it is further

**\*30 ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action**; and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4744735

---

**End of Document**                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 607341
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Paul CIPRIANI, Plaintiff,

v.

Harry C. BUFFARDI, Sheriff; Schenectady County Jail; Cheryl Clark, M.D.; Kevin J. O'Connor, Defendants.

No. 9:06-CV-0889(LEK/DRH).

|

Feb. 20, 2007.

**Attorneys and Law Firms**

Paul Cipriani, Plaintiff, pro se.

*DECISION and ORDER*

LAWRENCE E. KAHN, U.S. District Judge.

 **\*1** Presently before the Court is an amended complaint filed by Plaintiff Paul Cipriani ("Plaintiff"). Amended Compl. (Dkt. No. 10). This amended complaint was submitted in compliance with the Memorandum-Decision and Order issued by this Court on November 27, 2006 ("November Order"). Mem.-Decision and Order (Dkt. No. 7).

In its November Order, the Court advised plaintiff that he must set forth facts demonstrating that Defendants were personally involved in a violation of Plaintiff's rights. *Id.* at 4. Plaintiff was also advised that in order to establish the liability of a municipality, he must allege a custom or policy which is the moving force behind the violation. *Id.*

In his amended complaint, Plaintiff names thirteen defendants and asserts numerous claims against them arising from his confinement at Schenectady County Jail. Amended Compl. (Dkt. No. 10).

The Court notes that plaintiff has not named "Schenectady County Jail," "Cheryl Clark," or "Kevin J. O'Connor" in his amended Complaint. Therefore, "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are hereby dismissed as defendants in this action.

The Court also notes that Plaintiff's amended Complaint mentions "Mr. Booth" and "Mr. Purdy" only in the caption, and fails to allege any act or omission by these individuals. Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff. *Gonzalez v. City of New* York, No. 97 CIV. 2246(MGC), 1998 WL 382055, at \*2 (S.D.N.Y. July 9, 1998) (citing *Crown v. Wagenstein,* No. 96 CIV. 3895(MGC), 1998 WL 118169, at \*1 (S.D.N.Y.Mar.16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement) and *Taylor v. City of New York,* 953 F.Supp. 95, 99 (S.D.N.Y.1997)). Because plaintiff has failed to allege any personal involvement on the part of defendants "Mr. Booth" and "Mr. Purdy", they are hereby dismissed as defendants in this action.

In his amended Complaint, Plaintiff alleges that the remaining Defendants committed various violations of his constitutional rights, including inadequate medical care, breach of doctor-patient confidentiality, excessive force, denial of due process in a disciplinary proceeding, and interference with the grievance process. Amended Compl. (Dkt. No. 10).

Cipriani v. Buffardi, Not Reported in F.Supp.2d (2007)

2007 WL 607341

Based on the foregoing, Plaintiff's amended complaint as against the remaining Defendants is accepted for filing.

Plaintiff is advised, however, that the U.S. Marshals cannot effect service on a "John Doe" defendant. In the event that plaintiff wishes to pursue this claim against the "John Doe" defendants named in the amended Complaint, he must take reasonable steps to ascertain their identities. Plaintiff may then file a Motion to amend his complaint and seek leave of the Court to add such individuals, by name, as defendants to this lawsuit. Plaintiff is further advised that if these individuals are not timely served, the action will be against them will be dismissed.

**\*2** WHEREFORE, it is hereby

**ORDERED,** that "Mr. Booth," "Mr. Purdy," "Schenectady County Jail," "Cheryl Clark," and "Kevin J. O'Connor" are **DISMISSED** as defendants in this action, and it is further

**ORDERED,** that the Clerk revise the docket to add "Schenectady County," "Mr. Burns," "Mr. Jones," "Mr. Adams," "Ms. Jones," "Ms. Hull," "John Doe # 1," "John Doe # 7," "John Doe # 10," and "Loraine Walker" as defendants in this action, and it is further

**ORDERED,** that the Clerk issue summonses naming the remaining defendants and forward them, along with copies of the amended Complaint (Dkt. No. 10), to the United States Marshal for service upon the defendants, together with a copy of this Order.[1] The Clerk shall also forward a copy of the summons and amended Complaint by mail to the County Attorney for Schenectady County, together with a copy of this Order, and it is further

[1]    Plaintiff was granted leave to proceed with this action *in forma pauperis*. Mem.-Decision and Order (Dkt. No. 7).

**ORDERED,** that a formal response to Plaintiff's amended Complaint be filed by Defendants or their counsel as provided for in Rule 12 of *the Federal Rules of Civil Procedure* subsequent to service of process on Defendants, and it is further

**ORDERED,** that Plaintiff take reasonable steps to ascertain the identities of any other individual(s) that purportedly violated Plaintiff's civil and/or constitutional rights and, if appropriate, file a Motion to amend his complaint and add such individuals, by name, as defendants to this lawsuit, and it is further

**ORDERED,** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. *Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a proper certificate of service will be returned, without processing.* Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions, which must be returnable before the assigned Magistrate Judge with proper allowance for notice as required by the Rules. *Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in his address; his failure to do so will result in the dismissal of this action.* All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

2007 WL 607341

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 607341

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

2020 WL 409744
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Rodney JOSEPH, Plaintiff,

v.

Anthony ANNUCCI, et al., Defendants.

18-cv-7197 (NSR)

|

Signed 01/23/2020

**Attorneys and Law Firms**

Rodney Joseph, Napanoch, NY, pro se.

Rebecca Lynn Johannesen, NYS Office of the Attorney General, New York, NY, for Defendants.

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

**\*1** *Pro se* Plaintiff, Rodney Joseph ("Plaintiff"), formerly incarcerated at Sullivan Correctional facility, brings this action under 42 U.S.C. § 1983, asserting claims of deliberate indifference to his medical needs, forcible touching, assault, retaliation, denial of due process, and impeding religious practice. (*See* Complaint ("Compl."), ECF No. 2.) Plaintiff sues 44 medical staff members, kitchen staff members, correctional officers, and correctional officials employed by the New York State Department of Corrections and Community Supervision ("DOCCS"), including Anthony Annucci, William Keyser, Edward Burnett, Gail Williams, Angelo Justiniano, Corey Proscia, Joseph Maxwell, Lane Kortright, Swany Reid, Frank Decker, Samuel Encarnacion, Stainislaus Ogbonna, Jefrysson Aldana, Scott Christie, Colleen Bennett, Tanya Pomeroy, Wladyslaw Sidorowicz, Janice Wolf, S.T. Herman, Epifanio Tolentio, Kevin Miller, Wayne Jordan, William Beach, Renee Askew, Michael Wood, Van Fuller, Gina Maliga, Heather Wyatt, William Elberth, Kellyanne Giminiani, Christopher Conway, Blain Reddish, Mark Puerschner, David Jurgens, Edward Bonnell, Shaun Braisington, Joseph Franke, Matthew DeFrank, Chester Stungis, Robert Depaolo, and Adam Jarosz (the "Represented Defendants"). [1] (*Id.*)

[1] Defendants Ginger Eggler, "Ginsin," and Alan Hanson have not been served. (*See* ECF Nos. 10, 11, and 15; Defendants' Memorandum of Law in Support of Their Motion to Dismiss, ECF No. 80 ("Defs.' Mot.") at 8, n.1.)

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the Represented Defendants have moved to dismiss the Complaint. (*See* ECF No. 79.) Plaintiff has not responded to the motion; thus, per a memorandum endorsement dated August 5, 2019, the Court deemed the motion fully submitted. (*See* ECF No. 81.) For the following reasons, the Represented Defendants' unopposed motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

**I. Factual Allegations**

The following facts are derived from the Complaint or matters of which the Court may take judicial notice and are taken as true and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

### a. Plaintiff's Medical Condition and Treatment

Plaintiff asserts that in or about 2008, after suffering a heart attack, he was placed on diabetic medications by a Sullivan Correctional Facility ("Sullivan") doctor. (Compl. at 18.) Sometime in 2016, however, he was taken off the diabetic medications by the medical staff at Sullivan. (*Id.*) Shortly after being taken off the diabetic medications, Plaintiff began to suffer pain in his arms, difficulty breathing, and an increased heart rate. (*Id.*) He complained to the Medical Department on a sick call visit, but only received 30 days off from work. (*Id.*) Plaintiff asserts that the pain got worse and he kept going to sick call but nothing was done to alleviate his pain. (*Id.*) In or about June 2017, after going to emergency sick call with "unbearable pain," Plaintiff suffered another heart attack and was rushed to a hospital where he underwent quadruple-bypass heart surgery. (*Id.*) Plaintiff asserts the following: the medical staff taking him off the diabetic medications led to his heart attack; he is presently in severe pain but is not receiving all of the recommended medications prescribed by a specialist; and he is possibly suffering the symptoms of another imminent heart attack or stroke. (*Id.* at 18–19.)

### b. January 11, 2018 Incident

**\*2** Plaintiff also asserts forcible touching and assault claims against Defendant Correctional Officer Wyatt ("Wyatt") stemming from an incident that occurred on or about January 11, 2018. (*Id.* at 19.) Plaintiff alleges that, on January 10, 2018, he filed a grievance against Wyatt. (*Id.*) He alleges that after he filed the grievance, when he delivered feed-up bags for other inmates, Wyatt ordered him on the wall for a pat frisk although he had previously been pat frisked when he left the kitchen. (*Id.*) Plaintiff claims that while he was on the wall, Wyatt "started squeezing and poking in the areas where [he] had [his] quadruple-by-pass surgery, chest, arms, legs, and private parts." (*Id.* at 20.) Plaintiff alleges that Wyatt's actions caused him chest pains and led to a one-week hospital stay at Albany Medical Center because most of his arteries were blocked. (*Id.*)

### c. Officers' Retaliation

Plaintiff asserts that Wyatt acted in retaliation for Plaintiff's filing of the grievance against her. (*Id.*) Plaintiff also claims that he was subjected to retaliation by other correction officers for the filing of grievances. (*Id.*) He claims the following retaliatory actions: he was issued a fabricated misbehavior report and his job assignment was taken away on or about June 20, 2018, despite an "excellent work evaluation"; DOCCS staff would not allow him to notify his family when he was admitted to an outside hospital, or allow him to call his family; his cell was unreasonably searched five out of seven days; he was denied access to medication; and his religious callout was cancelled without a security reason. (*Id.* at 21–22.)

### d. Incident with Correctional Officer Elberth

Finally, Plaintiff alleges that while conducting a pat frisk, Correctional Officer Elberth ("Elberth") told him to reach back with his left hand and take off his right boot. (*Id.* at 22.) When Plaintiff told Elberth that he was unable to stretch out like that because of his medical issues, Elberth grabbed his left leg and pulled it back in a manner that caused Plaintiff's chest and face to hit the wall, causing him pain. (*Id.*) Plaintiff claims that Elberth then did the same thing to his right leg, despite Plaintiff informing Elberth that he was in pain. (*Id.*) After the incident, Plaintiff went to emergency medical and had to be rushed to the hospital for a "minor heart attack." (*Id.*) Plaintiff claims that the attack was caused by Elberth's actions, and now every time he sees Elberth, the officer threatens him. (*Id.*) Plaintiff asserts that Elberth also sends unspecified threatening messages to him through other correction officers. (*Id.*)

### LEGAL STANDARD

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)
Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 64 of 79
2020 WL 409744

## I. Rule 12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. When a motion to dismiss a complaint is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).

**\*3** *Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## II. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction in a federal court bears the burden of proving that jurisdiction by the preponderance of the evidence. *Id.* The court must take all facts in the complaint as true and draw all inferences in favor of the party asserting jurisdiction. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2000). As with Rule 12(b)(6), when dealing with Rule 12(b)(1), the Court construes the allegations in a *pro se* plaintiff's complaint in the light most favorable to the *pro se* plaintiff. *Makarova*, 201 F.3d at 113.

## III. 42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.' " *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

## I. Defendants Who Are Only Named in the Caption

As an initial matter, Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, and Jarosz are only named in the caption and the complaint contains no allegations that they violated the law or otherwise caused injury to the Plaintiff.

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

Plaintiff fails to assert personal involvement on the part of these 40 defendants in this matter. In order to hold a defendant responsible for a constitutional deprivation, Plaintiff must demonstrate, *inter alia*, the defendant's personal involvement. *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013). "[P]ersonal involvement of Defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [42 U.S.C. § 1983.]" *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "The general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the Defendant is required." *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060 (2d Cir. 1989); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 692–95 (1978). Supervisory officials may be personally involved within the meaning of § 1983 only if he or she participated in unlawful conduct. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986). "A Plaintiff must thus allege a tangible connection between the acts of a Defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[A] Plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In the context of a prisoner's lawsuit, a Plaintiff must show "more than the linkage in the prison chain of command" to state a claim against a supervisory defendant. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

  **\*4** Here, Plaintiff fails to allege facts of any personal involvement by the 40 aforementioned defendants. They are named in the caption only. The body of the Complaint does not contain any factual allegations naming them, or indicating that they violated the law or injured the Plaintiff in some manner. For this reason, the claims against Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, and Jarosz are dismissed without prejudice for lack of personal involvement.

## II. Eighth Amendment Medical Indifference

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Consequently, the government is obligated to provide adequate medical care to incarcerated people, and the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). In order to make a claim of medical indifference, a prisoner must show that there is: (1) an objectively serious medical need and (2) subjective deliberate indifference, which measures whether the prison official acted with a sufficiently culpable state of mind. *Harrison v. Barkley*, 219 F.3d 132, 136–38 (2d Cir. 2000). The defendant must have actual notice of the prisoner's serious medical need. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986). The subjective standard for deliberate indifference is essentially criminal recklessness: the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Therefore, "the defendant's belief that his conduct poses no serious harm ... need not be sound as long as it is sincere." *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006). Further, the charged official must be aware that there is a substantial risk of harm. *Id.*

Defendant does not allege that any Defendant was involved in his medical care or treatment—his Complaint mentions that "DOCCS Staff" took him off the diabetic medications, and that he made complaints to the "Medical Department" at sick call. (*See* Compl. at 18.) While chest pain resulting from clogged arteries and heart attacks surely constitute serious medical conditions,[2] Plaintiff has failed to allege any Defendant's involvement in, let alone any Defendant's deliberate indifference to, Plaintiff's medical care. Therefore, Plaintiff's Eighth Amendment claim is dismissed without prejudice.

2    "[S]evere chest pain, a symptom consistent with a heart attack, is a serious medical condition under the objective prong of the Eighth Amendment's deliberate indifference standard." *Melvin v. Cty. of Westchester*, No. 14-CV-2995 (KMK), 2016 WL 1254394, at \*5 (S.D.N.Y. Mar. 29, 2016) (quoting *Mata v. Saiz*, 427 F.3d 745, 754 (10th Cir. 2005)); *Mandala v. Coughlin*, 920 F. Supp. 342, 353 (E.D.N.Y. 1996) (noting that "ignoring a prisoner's complaints of chest pains where the prisoner later died of a heart attack" has been found to constitute a sufficiently serious injury).

It is possible that Plaintiff intended to bring claims against certain named defendants from the caption, whom he has identified as serving in medical roles at Sullivan: Ginger Eggler (Nurse Administrator 1); Colleen Bennett (Nurse Administrator 2); Wladyslaw Sidorowicz (Facility Doctor); and Janice Wolf a/k/a Janice Wolf-Friedman (Facility Doctor). To the extent that Plaintiff can provide more factual allegations relating to these four defendants with respect to Plaintiff's alleged medical indifference claim, Plaintiff is granted leave to replead that claim.

### III. Retaliation Under the First Amendment

 **\*5** Plaintiff's claims against several prison officials regarding alleged retaliatory action sound in the First Amendment. To properly assert a First Amendment retaliation claim, a plaintiff has the burden of demonstrating: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation ... Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds, Swierkewicz v. Sorema*, 534 U.S. 506 (2002) (citations omitted).

"Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." *Id.* In addition, the "casual connection" element requires plaintiffs to prove that an adverse action relates to protected First Amendment activity—that is, the plaintiff must present evidence from which a jury could conclude that the plaintiffs protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "To survive a motion to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.' " *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

The Second Circuit has repeatedly held that a court must assess a claim of retaliation with "skepticism and particular care" because such claims are "easily fabricated" by inmates. *Dawes*, 239 F.3d at 491. Such claims create a "substantial risk of unwarranted judicial intrusion into matters of general prison administration" because:

> virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.... Given that such adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large.

*Id.* (internal citations and quotations omitted).

#### a. January 11, 2018 Incident and Cell Searches

Plaintiff alleges that Defendant Wyatt retaliated against him because he filed a grievance against Wyatt on January 10, 2018, when Plaintiff discussed the grievance with Defendant Sergeant Fuller. (Compl. at 19.) Plaintiff alleges that this retaliation took the form of a pat frisk on January 11, 2018, in which Wyatt "squeez[ed]" and "pok[ed]" his chest, arms, legs, and "private parts." (*Id.* at 20.) Plaintiff further alleges that Area Sergeant Defendant Hanson told him that "if [he] did not sign off on this grievance, [he] was going to have a whole lot of problems." (*Id.* at 20.) Additionally, Plaintiff alleges that his cell was searched in an "unreasonable manner" five out of seven days. (*Id.* at 21.)

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 67 of 79

2020 WL 409744

On these issues, Plaintiff has failed to state a claim for relief because "cell searches and pat frisks, even if conducted for retaliatory reasons, cannot constitute an adverse action as required to support a First Amendment retaliation claim." *Amaker v. Fischer*, No. 10-CV-0977A SR, 2014 WL 8663246, at *8 (W.D.N.Y. Aug. 27, 2014), *report and recommendation adopted*, No. 10-CV-0977, 2015 WL 1822541 (W.D.N.Y. Apr. 22, 2015). This is "because inmates have no reasonable expectation of privacy in their prison cells" and therefore "no constitutional right to be free from cell searches of any kind, including retaliatory cell searches." *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005); *see also Henry v. Annetts*, No. 08 Civ. 286, 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010) ("Cell searches and pat frisks are an ordinary part of prison life and ... do not deter the average inmate from continuing to exercise ... First Amendment rights"). Furthermore, the Complaint does not link the cell searches to any particular defendant. (*See* Compl. at 21.) Accordingly, even if retaliatory in nature, Plaintiff's claims against Defendants Wyatt, Hanson, and any other defendants regarding these incidents must be dismissed with prejudice. [3]

[3]  To the extent that Plaintiff's allegation suggest that Defendant Wyatt used excessive force, these allegations also fail to state a claim upon which relief can be granted. The actions alleged by Plaintiff do not rise to the level of a constitutional violation. *See Kalwasinski v. Artuz*, No. 02 CV 2582 (LBS), 2003 WL 22973420, at *7 (S.D.N.Y. Dec. 18, 2003) (rejecting Eighth Amendment claim where defendant's action in pressing plaintiff's face into a wall while conducting a pat frisk was "consistent with a good faith attempt to maintain prison discipline and order" and lacked "malicious" intent).

To the extent that Plaintiff alleges that Defendant Wyatt committed offenses under the New York State Penal Law, this claim must be dismissed because the law does not provide a private right of action to enforce rights allegedly created by this provision. *See Casey Sys., Inc. v. Firecom, Inc.*, No. 94 CIV. 9327 (KTD), 1995 WL 704964, at *3 (S.D.N.Y. Nov. 29, 1995) ("As a general rule, when a statute is contained solely within the Penal Law Section, the legislature intended it as a police regulation to be enforced only by a court of criminal jurisdiction.").

### b. Loss of Job Assignment

**\*6** Plaintiff further alleges that his job assignment was taken away from him due to a "fabricated misbehavior report" as retaliation for Plaintiff's filing of harassment grievances. (Compl. at 21.) Plaintiff notes that despite his "excellent work evaluation," the proffered basis for his termination was that Plaintiff "do[es] not get along with other inmates and staff." (*Id.*) This claim similarly fails on the pleadings.

Defendants are correct that inmates do not have any constitutional, statutory, or regulatory right to any prison job. *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("New York law does not give a prisoner 'any statutory, regulatory or precedential right to his prison job.' "). Furthermore, the thin allegations contained in the complaint are "wholly conclusory with no plausible nexus between the grievance and the misbehavior report." *White v. Bergenstock*, No. 08 Civ. 717, 2009 WL 4544390, at *7 (N.D.N.Y. Nov. 25, 2009). Plaintiff's Complaint does not contain any allegations as to the nature of the misbehavior report that led to the loss of his job, who wrote the misbehavior report, nor does it connect the writer of that misbehavior report to the grievances in any way. *See Bouknight v. Shaw*, No. 08 CIV 5187(PKC), 2009 WL 969932, at *6 (S.D.N.Y. Apr. 6, 2009) (finding plaintiff's allegation that officer "wrote [him] up for revenge" was conclusory and insufficient to state a plausible retaliation claim).

Consequently, these claims are dismissed without prejudice. To the extent that Plaintiff can provide more factual allegations relating to the author of the misbehavior report and a connection between Plaintiff's grievance, the misbehavior report, and loss of Plaintiff's job, Plaintiff is granted leave to replead his claim.

### IV. First Amendment Freedom of Speech

Plaintiff additionally asserts that "DOCCS staff" did not allow him to notify his family about his treatment at an outside hospital, and that he was not allowed to call them. (Compl. at 21.) This amounts to a First Amendment freedom of speech claim, which is a cognizable claim under § 1983. *See Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975) ("A prison inmate's rights to communicate with family and friends are essentially First Amendment rights subject to § 1983 protection."). First Amendment rights "may not be infringed without good cause," and "there must be a showing of a substantial governmental interest serving the

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

legitimate and reasonable needs and exigencies of the institutional environment ... to warrant such limitations upon an individual inmate's rights to communicate." *Id.* (internal citations omitted). But, as courts considering prison telephone restrictions have agreed, "an inmate has no right to unlimited telephone use." *Pitsley v. Ricks*, No. 96-CV-0372NAMDRH, 2000 WL 362023, at *4 (N.D.N.Y. Mar. 31, 2000) (citing support from First, Sixth, Seventh, Eighth, Fifth, and Ninth Courts of Appeals). The same holds true with regard to mailing non-legal letters. *See Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir. 1972) ("[A] prisoner's right to mail letters to his family or friends is not absolute.").

In any case, allegations of infringement of rights must have some specificity. Again, Plaintiff has failed to allege that any Defendant in this action was involved in this denial. For the reasons outlined above, because a defendant's personal involvement is a necessary element of a 1983 claim, *see McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), this claim must be dismissed without prejudice.

## V. First Amendment Free Exercise

 *7  Plaintiff's next claim pertains to the exercise of his religious beliefs, which he claims were infringed by an "intentional" cancellation of his religious "call-out." (Compl. at 22.) Plaintiff alleges that "there is no security reason for this." (*Id.*)

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore ... religious beliefs in accordance with the dictates of their conscience.' " *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). The Second Circuit has acknowledged, however, that "although prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citations omitted).

To establish a free exercise claim, courts in this Circuit have generally required inmate plaintiffs to plead that the disputed conduct substantially burdened a sincerely held religious belief. *See Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *5 (S.D.N.Y. July 18, 2016); *Holland v. Goord*, 758 F.3d 215, 220–23 (2d Cir. 2014). Defendants "then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct[.]" *Salahuddin*, 467 F.3d at 275.

In the present action, Plaintiff has again failed to allege that any Defendant was involved in the cancellation of his religious call out. Plaintiff does not specify how often or why his callout was canceled. Without more, Plaintiff cannot plausibly allege that his sincerely held religious beliefs were "substantially burdened." *See Williams v. Weaver*, No. 9:03CV0912(LEK/GHL), 2006 WL 2794417, at *5 (N.D.N.Y. Sept. 26, 2006) (denial of access to two weekly religious services does not constitute substantial burden); *c.f. George v. Cty. of Westchester*, NY, No. 13 CV 4511 VB, 2014 WL 1508612, at *4 (S.D.N.Y. Apr. 10, 2014) (finding substantial burden plausibly alleged where plaintiff was denied congregate religious services "repeatedly" over two periods totaling approximately ten months). Accordingly, this claim is also dismissed without prejudice.

## VI. Eighth Amendment Excessive Force

Next, Plaintiff's description of the incident with Correctional Officer Elberth may be read to present an Eighth Amendment excessive force claim. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. For a prisoner to prevail on a claim asserting that he was subjected to cruel and unusual punishment, he must prove both "an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or failed to act, with a 'sufficiently culpable state of mind.' " *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 69 of 79

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

**\*8** The objective prong, requiring the alleged conduct to be " 'sufficiently serious' to reach constitutional dimensions," *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013), is a context-specific standard that focuses on the harm done given "contemporary standards of decency." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). The Supreme Court has explained that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. Therefore, "the malicious use of force to cause harm constitutes an 'Eighth Amendment violation[ ] *per se* ... whether or not significant injury is evident." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). Nevertheless, "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Lebron v. Mrzyglod*, No. 14-CV-10290(KMK), 2019 WL 3239850, at \*14 (S.D.N.Y. July 18, 2019).

### a. Excessive Force Analysis

Here, during the course of a pat frisk, Plaintiff alleges that Elberth instructed him to reach back with his left hand and take off his right boot. (Compl. at 22.) Plaintiff did not comply, and instead told Elberth that "he could not reach back like that because he had a Qua[dru]ple By Pass and was unable to stretch back like that." (*Id.*) In response, Elberth grabbed Plaintiff's left leg and pulled it back in a manner that caused Plaintiff's chest and face to hit the wall. (*Id.*) Plaintiff further specifies that Elberth retorted, "How does that feel?", to which Plaintiff responded that he was in pain. (*Id.*) Elberth then repeated the action using Plaintiff's right leg. (*Id.*) Subsequently, Plaintiff suffered a "minor heart attack." (*Id.*)

Defendants argue that the amount of force described by Plaintiff was commensurate with the need to conduct a pat frisk and does not rise to the level of a constitutional violation. The Court recognizes that "a pat frisk, involving some physical contact, is a standard procedure inside a prison." *Beckles v. Bennett*, No. 05 CIV. 2000 (JSR), 2008 WL 821827, at \*20 (S.D.N.Y. Mar. 26, 2008). As such, allegations of aggressive pat frisks have generally not been found to be "sufficiently serious" to present viable excessive force claims. *See Tavares v. City of New York*, No. 08 CIV. 3782 PAE JCF, 2011 WL 5877550, at \*6 (S.D.N.Y. Oct. 17, 2011), *report and recommendation adopted*, No. 08 CIV. 3782 PAE, 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011) (finding "actions taken consistent with a forceful pat frisk—the most serious contact alleged by the plaintiff—are not sufficiently 'repugnant to the conscience of mankind,' to give rise to an Eighth Amendment claim."); *Kalwasinski v. Artuz*, No. 02 CV 2582 (LBS), 2003 WL 22973420, at \*6 (S.D.N.Y. Dec. 18, 2003) (pressing inmate's face into the wall while conducting pat frisk was "commensurate with the need to conduct a pat frisk"); *Rivera v. Goord*, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (finding level of force applied in "aggressive pat frisks" does not rise to a constitutional violation); *see also Anderson v. Sullivan*, 702 F. Supp. 424, 427 (S.D.N.Y. 1988) (no excessive force found where, while handcuffing plaintiff, officer pulled plaintiff's hands behind his back and pushed him against a bar).

While the level of force alleged here by Plaintiff may not, on its own, rise to the level of a constitutional violation, Plaintiff has alleged extenuating circumstances that distinguish his case from those involving run-of-the-mill pat frisks. Plaintiff alleges that he informed Elberth of his medical condition and heart surgery, which prevented him from moving his body as Elberth had instructed. Plaintiff further alleges that he did suffer physical pain as a result of Elberth's actions—and informed Elberth of this —but that Elberth disregarded Plaintiff's condition and continued to forcefully move Plaintiff's legs. Plaintiff has thus averred sufficient facts to plausibly claim that force was applied "maliciously and sadistically for the very purpose of causing harm," rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6; *see also Santiago v. Westchester Cty.*, No. 13–CV–1886, 2014 WL 2048201, at \*5 (S.D.N.Y. May 19, 2014) (finding allegations that a prison official "threw [the] [p]laintiff to the ground, twisted his arm, [and] picked him up off the ground while squeezing his throat ... lead to a plausible inference that the force inflicted was malicious and wanton").

**\*9** This conclusion is reached by construing the allegations in the Complaint in a light most favorable to Plaintiff, and bearing in mind Plaintiff's status as a *pro se* litigant. Evidence uncovered during discovery may ultimately prove that the force employed by Defendant Elberth was done in a good faith effort to maintain or restore discipline, but such a determination is best resolved on a motion for summary judgment or at trial. *See Olutosin v. Lee*, No. 14-CV-685 (NSR), 2016 WL 2899275, at \*9 (S.D.N.Y. May 16, 2016); *Landy v. Irizarry*, 884 F. Supp. 788, 797 (S.D.N.Y. 1995) ("[T]he fact intensive inquiry of whether a particular

**Joseph v. Annucci, Not Reported in Fed. Supp. (2020)**
Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 70 of 79
2020 WL 409744

use of force was reasonable is best left for a jury to decide.") (collecting cases). As such, Defendants' motion to dismiss is denied as to Plaintiff's excessive force claims against Defendant Elberth.

### b. Qualified Immunity Defense

Defendants argue that Defendant Elberth should be entitled to the defense of qualified immunity. The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.' " *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted). To determine whether a right was clearly established, the Court looks to: (1) whether the right was defined with "reasonable specificity"; (2) whether the Supreme Court and the applicable circuit court support the existence of the right; and (3) whether under existing law a reasonable defendant would have understood that the conduct was unlawful. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013). "In this Circuit, a defendant may [raise qualified immunity in a pre-answer motion to dismiss], but the defense is held to a higher standard than if it were asserted in a motion for summary judgment." *Sledge v. Bernstein*, No. 11 CV. 7450(PKC)(HBP), 2012 WL 4761582, at *4 (S.D.N.Y. Aug. 2, 2012); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (a defense of qualified immunity in a motion to dismiss can only be sustained if plaintiff cannot state any facts that would prevent the application of qualified immunity).

It is well-settled that freedom from the use of excessive force is a clearly established constitutional right. *See, e.g., Atkins v. Cty. of Orange*, 372 F. Supp. 2d 377, 401 (S.D.N.Y. 2005), *aff'd on other grounds sub nom. Bellotto v. Cty. of Orange*, 248 F. App'x 232 (2d Cir. 2007). As discussed above, the Complaint sufficiently alleges a violation of Plaintiff's clearly established constitutional right to be free from excessive force under the Eighth Amendment. Further, "nothing at this stage of the proceedings suggests that [the defendant] reasonably believed his actions to be lawful at the time of the challenged act." *Santiago*, 2014 WL 2048201, at *5. Consequently, the Court does not find the application of qualified immunity to be warranted at this juncture.

## VII. Defendant Fuller

The only other Defendant named in the Complaint, Defendant Fuller, is also not alleged to have been personally involved in any constitutional violation. Plaintiff's only allegation against Defendant Fuller is that Plaintiff and Defendant Fuller engaged in a discussion about Plaintiff's intent to file a grievance against Defendant Wyatt. (Compl. at 19.) These allegations fail to show Defendant Fuller's personal involvement in any constitutional violation, and for the same reasons as previously stated, he is therefore dismissed from this action without prejudice.

## CONCLUSION

**\*10**  For the foregoing reasons, Defendants' unopposed motion to dismiss is GRANTED in part and DENIED in part. The motion is denied as to Plaintiff's excessive force claims against Defendant Elberth. The motion is granted as follows:

The following of Plaintiff's claims are dismissed *with prejudice*:

- Plaintiff's First Amendment retaliation claims against Defendants Wyatt, Hanson, and any other defendants regarding the January 11, 2018 incident and cell searches.

The following of Plaintiff's claims are dismissed *without prejudice*:

- Plaintiff's Eighth Amendment medical indifference claims against Eggler, Bennett, Sidorowicz, and Wolf;

- Plaintiff's First Amendment retaliation claim regarding the loss of his job assignment;

- Plaintiff's First Amendment freedom of speech claim;

- Plaintiff's First Amendment free exercise claim; and

- All remaining claims against Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, Jarosz, and Fuller.

Accordingly, the Clerk of the Court is respectfully directed to terminate the Represented Defendants' Motion to Dismiss at ECF No. 79.

Plaintiff shall have thirty-five days from the date of this Opinion, on or before February 27, 2020, to amend the Complaint as to those claims that are dismissed without prejudice. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain—aside from those claims dismissed with prejudice per this Order—must be included in the amended complaint. An Amended Civil Rights Complaint form is attached to this Opinion. If Plaintiff elects to file an amended complaint, Defendants shall have thirty days from the date of Plaintiff's filing to respond.

If Plaintiff does not file an amended complaint within thirty-five days, and he cannot show good cause to excuse such a failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice, and the Complaint (ECF No. 2) will serve as the operative complaint in this action to which remaining Defendants should respond. The remaining Defendant Elberth is directed to file an answer to the Complaint on or before March 19, 2020. The parties are directed to confer, complete, and submit to the Court the attached case management plan on or before April 9, 2020.

The Clerk of the Court is respectfully directed to terminate Defendants Annucci, Keyser, Burnett, Williams, Justiniano, Proscia, Maxwell, Kortright, Reid, Decker, Encarnacion, Ogbonna, Aldana, Christie, Eggler, Bennett, Pomeroy, Sidorowicz, Wolf, Herman, Jordan, Tolentio, Miller, Beach, Askew, Wood, Maliga, Giminiani, Conway, Reddish, Puerschner, Ginsin, Jurgens, Bonnell, Braisington, Franke, Defrank, Depaolo, Stungis, Jarosz, Fuller, Wyatt, and Hanson. The Clerk of the Court is directed to mail a copy of this Opinion to Plaintiff at his last address listed on ECF and file proof of service on the docket.

**\*11**  SO ORDERED.

Attachment

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 72 of 79

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)
2020 WL 409744

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____CV_____

(Include case number if one has been
assigned)

Write the full name of each plaintiff.

-against-

AMENDED
COMPLAINT
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

---

Rev. 5/20/16

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)
Case 1:25-cv-01435-AJB-TWD   Document 4   Filed 12/01/25   Page 73 of 79
2020 WL 409744

## I.   LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.   PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name          Middle Initial          Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                    State                    Zip Code

## III.   PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

Page 2

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

2020 WL 409744

## IV.  DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct
information is not provided, it could delay or prevent service of the complaint on the defendant.
Make sure that the defendants listed below are identical to those listed in the caption. Attach
additional pages as necessary.

Defendant 1:

| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |

Defendant 2:

| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |

Defendant 3:

| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |

Defendant 4:

| First Name | Last Name | Shield # |

Current Job Title (or other identifying information)

Current Work Address

| County, City | State | Zip Code |

Page 3

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 75 of 79

**Joseph v. Annucci, Not Reported in Fed. Supp. (2020)**

2020 WL 409744

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

### FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Page 4

2020 WL 409744

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

Page 5

**Joseph v. Annucci, Not Reported in Fed. Supp. (2020)**
Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 77 of 79
2020 WL 409744

### VII.    PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Prison Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

Date on which I am delivering this complaint to prison authorities for mailing: _____

Page 6

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 78 of 79

2020 WL 409744

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    Rev. Jan. 2012
------------------------------------------------------------x

                                                 **CIVIL CASE DISCOVERY PLAN**
                           Plaintiff(s),         **AND SCHEDULING ORDER**
         - against -

                           Defendant(s).         _____ CV _____ (NSR)

------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with
counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.    All parties [consent] [do not consent] to conducting all further proceedings before a
      Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The
      parties are free to withhold consent without adverse substantive consequences. (If
      all parties consent, the remaining paragraphs of this form need not be completed.)

2.    This case [is] [is not] to be tried to a jury.

3.    Joinder of additional parties must be accomplished by _____.

4.    Amended pleadings may be filed until _____.

5.    Interrogatories shall be served no later than _____, and responses
      thereto shall be served within thirty (30) days thereafter. The provisions of Local
      Civil Rule 33.3 [shall] [shall not] apply to this case.

6.    First request for production of documents, if any, shall be served no later than
      _____.

7.    Non-expert depositions shall be completed by _____.

      a.    Unless counsel agree otherwise or the Court so orders, depositions shall not
            be held until all parties have responded to any first requests for production
            of documents.

      b.    Depositions shall proceed concurrently.

      c.    Whenever possible, unless counsel agree otherwise or the Court so orders,
            non-party depositions shall follow party depositions.

8.    Any further interrogatories, including expert interrogatories, shall be served no later
      than _____.

Joseph v. Annucci, Not Reported in Fed. Supp. (2020)

Case 1:25-cv-01435-AJB-TWD    Document 4    Filed 12/01/25    Page 79 of 79

2020 WL 409744

9.    Requests to Admit, if any, shall be served no later than _____.

10.    Expert reports shall be served no later than _____.

11.    Rebuttal expert reports shall be served no later than _____.

12.    Expert depositions shall be completed by _____.

13.    Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.    **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

_____

_____
Nelson S. Román, U.S. District Judge

**All Citations**

Not Reported in Fed. Supp., 2020 WL 409744

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.